## Case No. 17,749.

### WILLIAMSON v. The ALPHONSO.

[1 Curt. 376; 2 Liv. Law Mag. 364.] [1]

Circuit Court, D. Massachusetts. May Term, 1853.

SALVAGE SERVICE—AUTHORITY OF MASTER.

[1. The relief of property from an impending peril of the sea, by the voluntary exertions of those who are under no legal obligation to render assistance, and the consequent ultimate safety of the property, constitute a case

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice. 2 Liv. Law Mag. 364, contains only a partial report.]

of salvage. It may be a case of more or less merit, according to the degree of peril in which the property was, and the danger and difficulty of relieving it; but these circumstances affect the degree of the service and not its nature.]

[Cited in The J. L. Bowen, Case No. 7,322. Quoted in The Hyderabad, 11 Fed. 756; The Alaska, 23 Fed. 607; The Brandow, 29 Fed. 880; Stone v. The Jewell, 41 Fed. 104; The Connemara, 108 U. S. 357, 2 Sup. Ct. 756.]

2. The master has no right to compel the mate to perform a salvage service; and if he does perform one by the order of the master, without objection, he is to be considered as a volunteer.

[Cited in The Cachemire, 38 Fed. 522; The Marie Anna, 48 Fed. 747.]

[Appeal from the district court of the United States for the district of Massachusetts.

[This was a libel for salvage by Augustus Williamson against the brig Alphonso and cargo. The district court decreed in favor of libelant (case unreported), and claimant appeals.]

F. C. Loring, for claimant.
Dana & Parker, for libelant.

CURTIS, Circuit Justice. This is a cause of salvage. The material facts are as follows: On the 29th day of August, 1852, the schooner Fawn, whereof the libellant was chief mate, sailed from the harbor of St. Thomas, in the island of St. Thomas, bound for Turks Island, in company with the brig Alphonso, bound for Rum Key. The courses of the two vessels being the same, till their arrival off Turks Island, there was an understanding between their masters that they would keep company up to that point. The Alphonso was a brig, of about 240 tons burden, and had a master, two mates, five foremost hands, a cook, and cabin-boy. The wife and infant child of the master, and a young servant girl, were on board as passengers. Her cargo consisted of salt, tamarinds, and specie to the amount of about $6,000; and the vessel and cargo were of the value of about $15,000. The second mate of the Alphonso, who was shipped at St. Thomas, was able to do duty when he came on board, but he was suffering under an affection of the eyes, which disabled him, so that he did no duty after the first day out. About six o'clock of the evening of Sunday, the day of sailing, the first officer of the Alphonso was taken sick. His disease was yellow fever; and during the residue of the passage, he was unable to leave the cabin, and, with some lucid intervals, was deranged in mind. The wife of the master was seized, about the same time, with the same disease, and either on Monday night, or Tuesday morning, the master also; so that, after he went below on Monday night, he does not appear to have been on deck. Some time during the morning of Tuesday, the master ordered the crew to set the colors, union down, as a signal of distress. About four o'clock, p. m., this signal, having been observed on board the schooner, she lay to,

and waited for the brig; and when the latter came up, the master of the schooner went on board in his boat, found the master and first officer of the brig very sick with the fever, and was requested by the master of the brig to lie by, close to the brig, during the night. The master of the schooner declined to do this, considering it somewhat hazardous; but proposed to send his mate, the libellant, on board, and that both vessels should run into Turks Island, then about twenty-three miles distant. This was assented to; the master of the schooner returned to his vessel, told the libellant to go on board the Alphonso, and keep the light of the schooner in sight during the night; and gave him the course, distance, and bearings of the two vessels from Turks Island. The libellant made no objection, went on board, and took the command. During the night, both vessels lay to, probably because the land being low, and the navigation, in approaching Turks Island, somewhat dangerous, it was not prudent to run for the harbor in the night. The next morning, the vessels were in sight of each other; they made the land between seven and eight o'clock, a. m., and came to anchor in the harbor about one o'clock, p. m. The weather was fine and clear during the whole time. The master of the brig was taken on shore, and soon after died. The consul of the United States came on board, and took charge of the vessel; and the next day after her arrival, placed a person in command of her.

The libellant entered his action in behalf of himself, the owners, officers, and crew of the schooner; but the owners and master having disclaimed the suit, the libel was amended, so as to go for a salvage compensation to the libellant alone. The district court decreed five hundred and fifty dollars to the libellant; the claimants appealed, and assigned three reasons of appeal; upon which the cause has been argued here. The first is, that the libellant did not render a salvage service.

It is strongly urged, that both the peril and the service were too slight to bring the case within the technical definition of salvage. But I am not of this opinion. The relief of property from an impending peril of the sea, by the voluntary exertions of those who are under no legal obligation to render assistance, and the consequent ultimate safety of the property, constitute a case of salvage. It may be a case of more or less merit, according to the degree of peril in which the property was, and the danger and difficulty of relieving it. But these circumstances affect the degree of the service, not its nature. That such a peril of the sea was impending over the brig, I think appears. She was out of sight of land. Her master and both officers were disabled. A deadly, infectious, or contagious disease had seized two of them and a passenger. It does not appear that any one on board was able to navigate the ves-

sel. There is no presumption that any one before the mast understood navigation, and there is some direct negative evidence that no one was a navigator. The master, judging upon the actual facts, ordered a signal of distress to be made. Under these circumstances, I cannot say that this vessel was not in distress, nor that the peril was so slight that a relief from it cannot rise to the dignity of a salvage service. It is true, she was but a short distance from a port. But the land was not in sight, and the proof shows that there were dangerous shoals in the neighborhood; and it does not appear that the crew, unassisted, knew the bearings of the land, or the course to be steered. It is urged, that the schooner was in company, and therefore there was no real peril. That does not show that the peril, arising from the condition of the officers and crew, was not real; but only that the means of relief from it, by others, who were under no legal obligation to render assistance, were at hand. But in considering the nature of such a service, we must look to the peril which impended, ir assistance were not given; not to the ease or difficulty of giving it, or the certainty that it could be obtained from salvors.

It was not argued, that there was any such contract of consortship between the brig and the schooner, as would repel a claim for salvage, upon the ground of a mutual legal obligation to give assistance, if either should fall into distress. Nor is there any thing in the evidence upon which to rest such a position. There was an understanding that the vessels would sail in company, and they did so; but undoubtedly, this meant no more than that they would sail out of port at the same time, and keep along together so far as both should deem it best to do so, without any legal obligation upon the subject. Independent of some usage of the trade, or of some special circumstances, it may well be doubted whether masters have a right to go further than this; and there is no reason in this case to suppose that either intended to go further.

My opinion therefore is, that the schooner rendered to the brig technical salvage service, to be compensated as such. It is, however, but one service, rendered by the owners, officers, and crew of the schooner, in lying by, sending on board the brig to ascertain her distress, and putting on board the libellant, to navigate and command her; and through this assistance, bringing her safely into port. As against these claimants, it must be viewed as one enterprise, to be paid for by one sum of money;. though inasmuch as only the libellant makes a claim, it is also necessary to ascertain, as against the claimants, what is his distributive share of the salvage compensation.

And this brings me to consider the second reason of appeal, which is, that the amount awarded to the libellant is excessive. I do not consider that the schooner was subjected to any appreciable danger, in rendering the salvage service. She lay by during the night; but I think she would have done so for her own safety, it being sworn that it is dangerous to approach Turks Island in the night. Certainly it does not appear, that her lying by was on account of the brig. In the morning, she sailed into her destined port, and the brig followed her. The master of the schooner carried one of the foremost hands from the brig to the schooner, so that the number of his crew was not diminished by the absence of the mate. In such a case, I consider the owners of the schooner not entitled to any large proportion of the salvage, though, from reasons of public policy, they cannot be altogether excluded therefrom. The master, who was the author of the enterprise, acted with promptness, discretion, and humanity. He went into the cabin among the sick, ascertained their condition and that of the brig, administered medicines, and exposed himself to some danger of infection. If he had chosen to make a claim, I do not perceive how I could have awarded to him less than to the mate, who, though longer on board the schooner, was acting under the responsibility of the master, and by his order. He does not appear to have been in the cabin at all, and consequently was exposed to but little actual danger, until after the salvage service was completed. But, on the other hand, the mate could not certainly know, when he went on board, how long it might prove necessary for him to remain, nor to what extent he would be exposed to the disease. It was suggested, that it did not appear, he knew the yellow fever was on board. It is not stated in terms by any witness. But I cannot suppose that the master of the schooner suffered him to go on board the brig in ignorance of the nature of the disease existing there, or that the boat's crew who brought the master back to the schooner, did not bring with them information of the cause of the distress of the brig, so that it became known to the mate. It is also urged, that he went by the order of the master, and not voluntarily. But the master had no power to compel him to go; and when a master orders either an officer or a man to perform a salvage service to another vessel, and he does it without objection, I think it must be taken, that he goes both by the order of the master and voluntarily. The order sanctions the act, and conveys the assent of the master and of the owners, whose agent he is; but it does not deprive the inferior officers, or the crew, of the merit of voluntary exertion. These are some of the considerations which have been relied on, as bearing on the quantum of compensation.

Considering the amount of the property at risk, which, though considerable, was not very large. the immediate proximity to the port, the presence of the schooner, which was bound to Turks Island, and lay by during the night, as I think, for her own safety; the state of the wind and weather, and the degree of danger to life, actual or reasonably

to be apprehended, my opinion is, that the sum of seven hundred and fifty dollars is a liberal salvage compensation for the actual service. Indeed, aside from the element of danger to life, I should view it as merely technical salvage compensation, and calling for slight compensation. That element is one of great importance; but under the circumstances of this case, it does not seem to me, that the danger, reasonably to have been apprehended by the mate, was considerable. Doctor Stedman, the only medical witness examined, says, it would depend upon the frequency and length of visits to the cabin. Before the completion of the voyage, it does not appear that the libellant had occasion to go into the cabin, and of course, the actual danger of infection was very small. Still, salvage compensation is greatly affected by motives of public policy; by the expediency, for the general good, of bestowing a liberal reward upon those who interpose in circumstances of trial and difficulty; and, speaking generally, there are few occasions more trying to the fortitude and courage of seamen, than those in which they are called upon to commit themselves to an infected ship upon the ocean. When this is done promptly, humanely, and successfully, the public interest requires that the reward should be liberal; and, as I have said, I consider the sum named, upon the actual facts, to be so. Of this sum, I consider the mate entitled to two fifths, or three hundred dollars. The evidence of payment of his claim is not sufficient. The small sum paid to him was neither offered nor received as a salvage compensation. It is highly probable, the libellant had not then thought of claiming salvage, having acted simply from motives of humanity. But this would not deprive him of a legal right, for which he has not received satisfaction. The sum actually paid to him should, however, be deducted from the sum decreed to him. The decree of the district court must be reversed, and a decree entered here, in conformity with this opinion. I do not allow costs to either party in this court. The costs incurred in the district court are to be paid by the claimant.