## STONE *v.* THE JEWELL.[1]

*(District Court, S. D. Alabama. December 23, 1889.)*

1. SALVAGE—SERVICE—DEFINITION.
    Salvage, as an act, is the relief of property from an impending peril of the sea by the voluntary exertions of those under no legal obligation to assist; and its merit varies with the peril of the property and difficulty of relief.
2. SAME—COMPENSATION.
    Salvage, as a compensation, is a reward for meritorious service in saving property in peril on navigable waters, and is allowed as an encouragement to such endeavors.
3. SAME—BASIS OF AWARD.
    Salvage compensation should be liberal, but not extravagant; and, where the circumstances show the service to be of a low degree, it may be diminished to mere wages.
4. SAME—REQUEST OF MASTER FOR ASSISTANCE.
    If the peril is not in fact imminent, but is thought to be so by the master, and he requests assistance, the ship cannot refuse to pay for the services then rendered, on the ground that the vessel would have been saved without them.
5. SAME—VESSEL AND CARGO.
    The vessel is not liable for the proportion of salvage due by the cargo; and, on a libel against the vessel alone, no award can be made against the cargo for its proportion.

In Admiralty. Libel on a claim for alleged salvage services to a steam-boat on the Alabama river.

[1] Reported by Peter J. Hamilton, Esq., of the Mobile bar.

*G. L. & H. T. Smith*, for libelant.
*Pillans, Torrey & Hanaw*, for claimant.

TOULMIN, J. Salvage is defined to be "the relief of property from an impending peril of the sea by the voluntary exertions of those who are under no legal obligation to render assistance, and the consequent ultimate safety of the property. It may be a case of more or less merit, according to the degree of peril in which the property was, and the danger and difficulty of relieving it. But these circumstances affect the degree of the service, and not its nature." *The Alphonso*, 1 Curt. 376–378; *The Alaska*, 23 Fed. Rep. 607.

Mr. Justice BRADLEY, in the case of *Sonderburg v. Tow-Boat Co.*, 3 Woods, 146, says:

"Salvage is a reward for meritorious services in saving property on navigable waters, in peril, and which might otherwise be destroyed, and is allowed as an encouragement to all persons engaged in business at sea, or on navigable waters, and others, to bestow their utmost endeavors to save vessels and cargoes which are in imminent peril. Viewed in this light, it is awarded in such measure, proportioned to the value of the property saved, as to secure the object intended."

And it is held that it is not necessary that the danger should be imminent and absolute. It is sufficient if, at the time the assistance is rendered, the vessel has encountered any damage or misfortune which might possibly expose her to destruction if the services were not rendered. If the vessel is in a situation of actual apprehension, though not in actual danger, and the assistance of the salvors is requested by and rendered to the persons in charge of the vessel, they cannot plead that they are not bound to pay for the services rendered on the ground that the vessel would have been saved if left in her former position. 2 Pars. Shipp. & Adm. 282. Such I consider the case at bar. The steamer Jewell may not have been in a situation of actual danger. But, from the weight of the evidence, I find that she was in a situation of apprehension, and that, after a voluntary and repeated offer of Capt. Stone to render her assistance with his crew, (which was at first declined by the master in charge of her,) Capt. Stone was requested by and rendered to the said master assistance in discharging her cargo. The master of the Jewell cannot now plead that the services rendered ought not to be paid for on the ground that the vessel would have been saved if left as she was. But the master of the Jewell says he thought it was a gratuity on the part of Capt. Stone, and so understood it at the time. On the other hand, Stone says it was not intended as a gratuity, and he expected reward for the services of himself and crew, and that nothing was said on his part to induce a contrary belief. I cannot find, from the evidence, that the services were intended as a gratuity, and particularly in view of the fact that the Jewell and Stone's boat (the Moore) were rivals,— were running in opposition to each other. But the claimant further says that there was a custom for vessels engaged in the river trade—the trade in which these steamers were engaged—to assist each other gratu-

itously. My opinion is that the evidence of the fact of the custom set up is insufficient to justify me in pronouncing against the claim of libelants on that ground.

Now, then, I think that the libelants are entitled to compensation as salvors. But what compensation should be allowed is an embarrassing question. It has been one of much difficulty to me. Salvage is regarded in the light of compensation and reward, but it may be diminished by circumstances to mere wages; and, in endeavoring to fix a suitable salvage reward for the services rendered, all the circumstances have to be considered. The steamer, in her first position, was in peril,—in some danger of sinking. But this danger had been greatly diminished at the time the libelants went to work on her. She had been materially lightened by the discharge, by her own crew, of some 20 bales of cotton and 200 sacks of cotton seed of her cargo; and her crew continued to work along with the libelants (and they were of about equal numbers, making a total of 35 or 36 men) until some 60 bales of cotton and about 600 sacks of cotton seed were discharged, being about 40 bales of cotton and 400 sacks of cotton seed discharged by their joint efforts. The steamer was at the time made fast to the bank of the river by lines. It was at a public landing, and where there were quite a number of men on shore. The extent of the danger and the duration of the services were inconsiderable. Indeed, there was no difficulty in relieving the steamer, no danger whatever to libelants, and the duration of the service rendered was short. No special skill was required, and the prospect of succor from other sources was near. The value of the vessel as shown by the sale by the marshal, which I consider a fair test of her value, was $1,700. Now, all these matters are to be considered in endeavoring to fix a suitable reward for the services rendered. The authorities say that the compensation should be liberal, but not extravagant. My opinion is that the service rendered was a salvage service, but a very low degree of salvage service; but I award what I consider a liberal compensation for it, "as an encouragement to all persons engaged in business at sea or on navigable waters, and others, to bestow their utmost endeavors to save vessels and cargoes which are in peril." I award $170.

The vessel is not liable for the proportion of salvage due by the cargo. *The Alaska,* 23· Fed. Rep. 597; and no award can be made against the cargo in this suit.

The exceptions to the libel are in part sustained, and the libelants are taxed with the costs thereof, and of the proceedings under the libel against the consignees of the cargo. The claimant is taxed with all other costs. The amount realized on the decree, after deducting the costs taxed against the libelants, will be prorated, and paid to them on the basis of their respective wages. A decree will be entered accordingly.