SONACHALL (UNITED STATES v.). See Case No. 16,352.

SON AND HEIR, The (LAKE ERIE & B. STEAMBOAT CO. v.). See Case No. 7,-995.

## Case No. 13,175.

SONDERBURG et al. v. OCEAN TOW BOAT CO. WOODS et al. v. SAME. GARITY et al. v. SAME.

[3 Woods, 146.] 1

Circuit Court, D. Louisiana. April, 1878.

SALVAGE—TIME ENGAGED IN SERVICE—APPORTIONMENT AMONG SALVORS—RULE—DISTRIBUTION AMONG PARTIES.

1. The rule adopted in this circuit for the apportionment of salvage is to give one-half to the salving vessel and the other half to her officers and crew, in proportion to their rates of wages.
[Cited in Markham v. Simpson, 22 Fed. 745.]

2. It is usual also to allow the salving vessel any extra expenses incident to the salvage service which she may have incurred over and above her ordinary outlays.

3. The fact that salvors were engaged but a short time in the salvage service, is entitled to but little weight in fixing the amount of their salvage.
[Cited in The Connemara, 108 U. S. 357, 2 Sup. Ct. 756.]

4. Salvage is a reward for meritorious services in saving property in peril on navigable waters, which might otherwise be destroyed, and is allowed as an encouragement to persons engaged in business on such waters, and others, to bestow their utmost endeavors to save vessels and cargoes in peril.
[Cited in The Lee, 24 Fed. 48; Stone v. The Jewell, 41 Fed. 104.]

---

2 [From 1 N. B. R. 310 (Quarto, 58).]
1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

2 [From 1 N. B. R. 310 (Quarto, 58).]

5. Salvage is awarded in such measure, proportioned to the value of the property salved, as to secure the object intended, namely, that seamen and others may have the strongest inducement to face danger and incur personal risk to save that which is in peril of being lost, whether vessel or lives or cargo.

[Cited in Stone v. The Jewell, 41 Fed. 104.]

6. As a general rule, it is much better for all parties that the apportionment of salvage among the salvors should be made by the court rather than by the parties themselves.

7. Owners of salving vessels in making distribution of salvage between themselves and the officers and crew of the vessels, should do so with great caution and after the fullest explanation of all the facts to the parties interested.

8. If done otherwise, the court will set the distribution aside.

9. When the petty officers and crew of a salving vessel, who have sued her owners for their share of the salvage, did not know the amount of salvage that had been received by the owners until just before the bringing of their suit, delay in bringing the suit could not be set up as a defense.

10. A libel in personam brought by salvors to recover their share of salvage against another salvor who, two years before, had received and still held the money belonging to libelants, could not be defended against on the ground that the claim was stale.

[Cited in Coburn v. Factors & Traders Ins. Co., 20 Fed. 646.]

[Appeal from the district court of the United States for the district of Louisiana.]

In January, 1875, the ship Princeton, laden with 4,000 bales of cotton, was set on fire by lightning, near the Southwest Pass of the Mississippi river, and saved by libelants, composing the crews of the steam tugs Rio Grande and Ocean, belonging to the Ocean Tow Boat Company, and the steam tug Rochester, associated with the Ocean Tow Boat Company, and in their associated capacity engaged in the towing business upon the waters of the Mississippi river and the Gulf of Mexico. For the services of these three boats and their crews, in saving ship and cargo, the Ocean Tow Boat Company received at one time $30,000 for salvage, and subsequently $4,600 in addition thereto, as they claim, for towage, barge hire, guarding cotton, etc. The tow boat company distributed less than one-fourth of this sum among the officers and crews of the salving tow boats. These libels were filed about two years after such distribution by [Peter Sonderburg and others, J. Woods and others, and John Garity and others] the petty officers and crews of the tow boats to recover of the tow boat company what they claimed to be the residue of their share of the salvage.

E. D. Craig and R. De Gray, for libelants, on the question of proper division of salvage between the owners of the salving vessels and her officers and crew, cited The Henry Ewbank [Case No. 6,376]; Evans v. The Charles [Id. 4,556]; Mason v. The Blaireau, 2 Cranch [6 U. S.] 240; The Galaxy [Case No. 5,186]; The Charles Henry [Id. 2,617]; Union Tow Boat Co. v. The Delphos [Id. 14,400]; The Saragossa [Id. 12,335]; The Bolivar v. The Chalmette [Id. 1,611].

Joseph P. Hornor and W. S. Benedict, for respondent, on the same question, cited The C. W. Ring [Id. 3,525].

BRADLEY, Circuit Justice. The first question in this case relates to the proportion of the salvage money which should be awarded to the vessels engaged in the salvage service, on one side, and the officers and crews of said vessels on the other, supposing no binding agreement between them had been made on the subject. It is the province of the court, where the parties themselves cannot agree, not only to award the amount of salvage, but to apportion it amongst those who have contributed the salvage service. And whilst the court never loses its power to make this apportionment according to the equity and justice of each case, it is desirable to have a general rule to be followed in all ordinary cases.

I perceive nothing in the present case that should take it out of the general rule which has been adopted in this circuit, of allowing one-half of the salvage money to the vessels, and the other half to the officers and crews in proportion to their rates of pay. It is usual to allow to the owners any extra expenses which they may have been at, over and above the ordinary expenses of the salving vessels, whilst engaged in the salvage service. I am satisfied that the sum of $4,650 which the owners received in addition to the sum of $30,000 will cover the whole amount of such extra expenses, except the $2,000 which was paid to the master of the Princeton. This, I think, may also be properly allowed, as it was paid for the common benefit, and was an extra expense. This will leave the sum of $28,000 to be divided between the vessels and the officers and crews respectively, or $14,000 to each.

The plea that the men were actually engaged in putting out fire but a few hours, and all other considerations of that sort, have very little to do with the case. For that matter, it might also be said that the tug boats were engaged in throwing water into the burning ship but a very short time, and that the remuneration they receive is greatly disproportioned to the actual amount of service rendered. This is not the principle on which salvage is allowed. It is not the principle on which the amount was settled upon in this case. Salvage is a reward for meritorious services in saving property on navigable waters, in peril, and which might otherwise be destroyed, and is allowed as an encouragement to all persons engaged in business at sea or on navigable waters, and others, to bestow their utmost endeavors to save vessels and cargoes which are in imminent peril. Viewed in this light, it is awarded in such measure, proportioned to the value of the property sav-

ed, as to secure the object intended, namely, that mariners and sea-faring persons and others may have the strongest inducements to face every danger and to incur every personal risk in order to save that which is in peril of being lost, whether ship, or lives, or cargo.

The next question is, whether the libelants are bound by the agreement which they made with George McClelland, to take the several amounts which he paid them, when he settled with them in February, 1875. As a general thing it is much better for all parties that the apportionment of salvage money should be made by the court than by the parties themselves. There is such a strong temptation for the owners of the salving vessels to speculate upon the improvidence of the men (who are always easily satisfied with a handful of ready cash), and to work upon their fears of losing their situations, that they will be exposed to the suspicion of doing these things even when they have intended to act with perfect fairness. The men are placed at a disadvantage anyhow. If they are firm in standing up to their rights (supposing they fully understand them), they are naturally looked upon by their employers as animated by a spirit of opposition and pertinacity, and the result often is that they are unjustly discharged. But it oftener happens that they do not understand their rights, and that they are easily persuaded to accept a less proportion than they are justly entitled to. For these reasons owners should be very cautious about making such settlements with their men. It should never be done except with the fullest explanation of all the facts, so that every thing may be transacted understandingly and above board. If done otherwise the court should not hesitate to set the arrangement aside. This is the general course pursued in all cases of attempted settlements with seamen. They are regarded as incompetent to take care of their own interests, and they are therefore looked upon as wards of the court.

I think the settlement made with the men in the present case ought not to be binding upon them. It is manifest, from the evidence, that they were not informed, and did not know, when they made the settlement, that an allowance of $30,000 salvage money had been agreed upon by the parties. Yet this had been agreed upon nearly or quite a week before. Without looking any further, it seems to me that the suppression of this important fact is sufficient to deprive the arrangement of all binding force and validity.

It has been suggested that if the crews were competent to empower George McClelland to represent them in settling the amount of salvage money with the owners of the ship and the agent of the underwriters, they should be regarded as equally competent to settle for their own proportion of the money, and should be equally bound by their own acts. But the two things stand on an entirely different footing. They might well intrust George McClelland, or any other person, with power to co-operate with the owners of the tugs in making a settlement for the salvage service, for they might be well assured that the owners would look sufficiently well after their own interests to protect that of all parties concerned in the salvage. Besides, in that matter, George McClelland would have no interest opposed to theirs. But when it came to a settlement of their proportion of the money, George McClelland really represented the owners of the tugs. This was the necessary relation of the parties. The less he could get them to take the more the owners would receive. The money which he actually paid to the men was afterwards refunded to him by the owners, out of the $30,000 received by them.

It has been suggested that this $30,000 was not all for salvage, but partly for towage, lading and unlading, etc. This plea can hardly be sustained. In the first place, if there is any such admixture of moneys and considerations, it is the fault of the owners for making it. No separate account of any such towage or loading and unloading is presented; and it is fair to infer that all service of that kind was amply covered by the extra sum of $4,650 which was subsequently received.

The only other point is the question of delay in bringing these suits. On that I have no difficulty. It is not shown that the libelants knew of the settlement which had been made, and the amount of salvage money which had been received, until the suit was brought; on the contrary, the evidence is that they did not know of it. This, of itself, would sufficiently account for the delay, if there were any delay to be accounted for. But I do not see that an action in personam, such as this is, against those who have received and still hold moneys fairly belonging to the libelants, can be said to be a stale demand, in the admiralty sense, by reason of any lapse of time which has taken place in this case. At all events it is unnecessary to pursue the subject, since I am perfectly satisfied that under the circumstances of this case the exception ought not to prevail.

The decree of the district court will be affirmed, except as to the allowance to the respondents of the sum of $2,000 paid by them to the master of the Princeton, which is first to be deducted from the $30,000 before the division is made. The respondents (the appellants in this court) will be decreed to pay the costs. Let a decree be made accordingly. (The decree can be modified by deducting one-fifteenth part from the amount decreed to each libelant in the court below.)