MARKHAM and another *v.* SIMPSON, Jr., and another.

*(District Court, S. D. New York. December 11, 1884.)*

1. SALVAGE—DISTRIBUTION—RELEASE.

Where a claim of salvage has been settled amicably, and the moneys distributed among the owners, captain, and crew, and a release under seal executed by the seamen for their various shares, a libel filed four years afterwards by some of the crew to obtain a larger sum will not be sustained, in the absence of any actual or constructive fraud, or of any grossly wrong or unfair distribution.

2. SAME—DEVIATION OF SALVING VESSEL—INCREASE OF RISK.

The increase of the owners' risk through the deviation of the vessel, having a large and valuable cargo, in order to effect a salvage service, is an important element in the apportionment. In this case, that risk being large, and the salvage service being of a very low order of merit, the allowance of two-thirds to the vessel *held* not unreasonable.

3. SAME—DISTRIBUTION SUSTAINED IN PART.

The libelants being at the time of settlement fully informed of the mode of distribution of $5,000 among the master and crew, and not in the libel complaining in respect to that part of the salvage distribution, *held*, that that part of the distribution would not be considered or disturbed.

In Admiralty.

*Geo. W. Carr*, for libelants.

*James K. Hill, Wing & Shoudy*, and *H. Putnam*, for respondents.

BROWN, J. This action was brought by two of the crew of the brig Redowa to recover an additional sum for their share of salvage moneys that had been previously received and distributed by the defendants, for the rescue of the bark John E. Chase. About 4 P. M. of June 13, 1878, the Redowa, being on a voyage from New Orleans to Fall River, when off Fernandina, fell in with the bark John E. Chase, which was derelict and abandoned. The first mate and two seamen, including one of the libelants, was sent off by the captain of the Redowa, in a small boat, to examine the derelict vessel. Before dusk they returned, and reported her salvable. The Redowa lay by until the next morning, when the mate and two others of the crew were sent aboard, and she was navigated under sail into Tybee roads, which she reached on the seventeenth of June. The Redowa kept her company, sending her provisions by a small boat daily. At Tybee roads the captain remained to take charge of the Chase, and to enforce the claims for salvage; while the Redowa, in charge of the mate, completed her voyage to Fall River, which she reached in safety on June 26th. On the following day powers of attorney were given to the defendants, by all the members of the crew, to settle the claims for salvage. By the second of July following an amicable settlement was effected in New York with the owners of the vessel, and with the underwriters of the cargo, by an allowance of 30 per cent. of their value for the salvage services. The Chase was valued at $12,500, and her cargo at $45,000. The gross amount of salvage thus received was somewhat above $18,000, and, deducting actual expenses, netted about $15,000. Two-thirds of this was paid to the owners of the Redowa, and one-third to the captain and crew. The two libelants received $100 each, and gave a receipt in settlement, and a release in full. They were informed of the amount distributed among the crew, and do not seek now to disturb the distribution among them. They allege in their libel that they were not informed of the whole amount of the salvage recovered, nor of the amount paid, or proposed to be paid, to the owners of the vessel; and they so testify. No fraud is alleged in the libel, or sustained by the proof. The respondents testify, in general, that the whole matter was explained to all the members of the crew, but can give no particulars. The libelants do not testify that any inaccurate statement was made to them, or that any inquiries made on their part were not properly answered. The libel was not filed until July 27, 1882, some four years after the distribution and releases. After this lapse of time little reliance can be placed on the testimony as to the particular details of conversations so long ago. It is sufficient to say that nothing approaching actual or constructive fraud is either proved or suggested. Upon such facts, and after so long delay, the court, even in the case of seamen, would

not disregard such a settlement and general release, unless it clearly appeared that the distribution made was so grossly wrong and unfair as to amount, of itself, to a presumptive fraud upon the seamen. *The Afrika*, L. R. 5 Prob. Div. 192; *The James Armstrong*, 33 Law T. 390. If there be any prevailing rule in cases subject to so great differences as cases of salvage, it is to allow to the salving vessel one-half, in the absence of special circumstances. Cohen, Adm. 152; *Sonderburg* v. *Ocean Tow-boat Co.* 3 Woods, 146. The German Code, art. 751, prescribes absolutely one-half to the salving vessel, in the absence of any contrary stipulation.

The circumstances of this case are almost wholly devoid of those elements which go to make up a highly meritorious service in the salvors. The weather was calm and mild, except some roughness on the first day. There was no danger; no special skill; no occasion for the display of personal enterprise, bravery, or daring. The duties of the crew that remained on the Redowa were unchanged, and not sensibly affected, except taking provisions daily, for three days, in a small boat from one vessel to the other, a short distance in a calm sea. The sum of $5,000 distributed to the master and crew for these services would seem to be an ample compensation. The only material danger and risk which the salvage, in fact, involved, was in making the owners of the Redowa liable as insurers of their own vessel and of her cargo by reason of the deviation to effect the salvage service. *The Henry Ewbank*, 1 Sum. 425; *The Nath. Hooper*, 3 Sum. 544, 578. The amount thus put at the risk of the owners was large, viz., some $18,000 for the value of the Redowa, and $85,000 for the value of her cargo. That such a deviation is a proper and important element in the distribution of a salvage award is now well settled. This rule was adopted in this country as early as 1792, in the case of *The La Belle Creole*, 1 Pet. Adm. 31, 39, 45, where three-fourths of the award were given to the ship. In the case of *The Waterloo*, elaborately considered by BETTS, J., in this court, (Blatchf. & H. 114,) the same rule was applied by him, giving two-thirds to the owner of the vessel, though the labors of the crew were very much greater than in the present case. The same proportion was allowed by Dr. Lushington in *The Scindia* and *The True Blue*, L. R. 1 P. C. 241, 250. See, also, *The Farnley Hall*, 46 Law T. (N. S.) 216; *Scaramanga* v. *Stamp*, L. R. 5 C. P. Div. 295; *The Waterloo*, 2 Dod. 443.

The services of the mariners being of a very inferior order of merit in this case, and there being no material risk on their part, while they employed the owners' property in saving the derelict vessel, and in so doing imposed a heavy risk upon the owners by the deviation, I think the allowance of two-thirds is such as the court itself would have made; and the libel is therefore dismissed.