## The Lee [1]

### Tessier and others *v.* The Lee and Cargo.[1]

(*Circuit Court, E. D. Louisiana.* December 27, 1884.)

SALVAGE—BARGE.

A barge broke loose in the harbor of New Orleans, and about 20 minutes thereafter, being apparently derelict, while her owners were in search of her, but not in sight, she was checked by some men in a yawl, who took possession of her and tied her up to the shore in safety. The owner of the barge shortly afterwards came for her, and libelants claimed a reward for their services, which was promised, and afterwards refused with opprobrious and insulting language, whereupon libelants retained possession of the barge and cargo, and brought their libel for salvage. The barge and cargo were worth $1,900. *Held,* that the services rendered by libelants were valuable, and they had an award of $25 each.

Admiralty Appeal.

*R. King Cutler,* for libelants.

*E. W. Huntington, Horace L. Dufour,* and *A. C. Lewis,* for claimants.

PARDEE, J. The libelants found the barge Lee, worth about $1,000, with a cargo of cotton-seed, worth about $900, adrift, with no one on board and apparently derelict, in the port of New Orleans. The wind was high, danger signals were out, the current was strong, and the barge was drifting towards and near to several steam-boats moored head on to shore, but lying with their sterns well out in the stream. There was no owner or apparent searcher for the barge in sight. The libelants, two of whom were out in a yawl, and one on shore, succeeded in getting a line aboard the barge, and with the help of others aboard the steam-boat Warren, with some difficulty and risk, checked the barge, and, hauling her in, tied her up in safety, so that she did no damage to herself nor to the other shipping near. When the owner, after about 20 minutes, came for his barge the libelants claimed a reward for their services, which was promised, but afterwards, when the barge had been removed, although the libelants remained aboard, it was refused, and (according to the weight of the evidence) refused with opprobrious and insulting language, whereupon the libelants retained possession of the barge and cargo and brought their libel for salvage.

It seems that the barge Lee belonged to the steam-boat Alberto, and shortly preceding its being found adrift was moored along-side of the Alberto, near the Cromwell Line landing; that the steam-ship New Orleans, of that line, in swinging out to start on her voyage, collided with the barge, crowding it upon the Alberto, and endangering that boat by pushing her on the wharf to such an extent that the master of the Alberto cut the barge adrift and whistled for assist-

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

ance.   Several tug-boats responded after more or less delay, but first gave assistance to the Alberto in rescuing her from her dangerous position on the wharf, and afterwards one of them was sent after the barge, which had meanwhile drifted with the current of the eddy and the force of the wind up near the shipping, just below the head of Canal street, where it was rescued by libelants as aforesaid.

The libelants' demand for compensation is resisted on the grounds that the barge was neither derelict nor in danger, and that the services of libelants were not valuable, but were officious, without warrant and authority, and were for the purpose of fleecing and extorting money from claimants.   From the evidence I conclude that the barge was not derelict, but was in danger of damaging itself and of doing great damage to other shipping; and while the libelants were no doubt actuated with the hope of reward, they rendered service in good faith, with sufficient warrant, and the service so rendered was valuable.   That the services were rendered with a view to reward ought not to prejudice the libelants' claims in a court of admiralty; for, as is so well said by Mr. Justice BRADLEY, "salvage is a reward for meritorious services in saving property in peril on navigable waters, which might otherwise be destroyed, and is allowed as an encouragement to persons engaged in business on such waters and others to bestow their utmost endeavors to save vessels and cargo in peril."   See *Sonderburg* v. *Tow-boat Co.* 3 Woods, 146.

The answer charges that the libelants knew the circumstances under which the barge was turned adrift, and that she was not abandoned, and particularly alleges that she was in no danger; but these charges are not supported by evidence.   Under the principles that govern courts of admiralty in salvage cases, I am unable to see any sound reason for withholding compensation in this case.   The claimants should have complied with the promise of the master of the Alberto, and paid or tendered a small sum at the outset, and the court would have sustained the tender; but as the claimants, instead, have resisted, largely increasing the expenses of libelants, and at the same time have unjustly vilified them, I feel it my duty to make such allowance as will be really compensatory for all but the vilification.

A decree may be entered awarding each of the libelants $25, and condemning the claimants and their surety, on the release-bond, to pay the same, together with all costs in the case.