THE AMITY.

MARCUSSEN v. SAUNDERS et al.

(Circuit Court of Appeals, Fifth Circuit. May 21, 1895.)

No. 360.

SALVAGE COMPENSATION—REDUCTION ON APPEAL.

A tug worth $30,000, with some risk and damage to herself from intense heat, drew away from a burning wharf a bark which had already caught fire in her masts and rigging. By means of her powerful steam pump, the tug, in about six hours, succeeded in subduing the flames. After an absence of some four hours, the fire having broken out again, she returned to the bark, and, by request, lay by her all night, extinguishing the flames, which continued to break out afresh under a strong wind. The estimates of various witnesses as to the value of the bark after the fire ranged from $1,500 to $10,000, but she had been insured for $23,000. The district court placed her value at $10,000, and, the cargo being worth about $10,000, awarded $5,000 as salvage. Held that, while the valuation of the vessel appeared high, yet, under all the circumstances, the award could not be considered so excessive as to warrant the interference of an appellate court.

Appeal from the District Court of the United States for the Northern District of Florida.

This was a libel by E. E. Saunders, owner of the tug Echo, against the Norwegian bark Amity (P. E. Marcussen, claimant), to recover for salvage services. The crew of the Echo intervened to assert their claim. The circuit court rendered a decree for libelants in the sum of $5,000, and the claimant appealed.

In the district court the following opinion was filed by SWAYNE, District Judge:

On October 27, 1894, the Norwegian bark Amity was lying at Muscogee wharf, in the harbor of Pensacola, loaded with kainit and muriate of potash,

and was discharging the same. She was on the east side of the wharf, bow in, heading northward. At about 11 o'clock a. m. on that day, the said wharf, warehouse thereon, and coal chutes attached thereto were discovered to be on fire, in close proximity to the said bark. The steam tug Echo, owned and operated by libelants, was at the time about three-quarters of a mile away, on the bay, engaged with another vessel. As soon as the officers of the tug saw the fire and the danger to the Amity, they went immediately to her assistance, and arrived alongside in about seven minutes from the time they discovered the fire. By the assistance of the crew of the bark, they made fast to her, and towed her away from the wharf, to a place of safety in the bay, and, by the aid of a powerful steam pump, succeeded in extinguishing the fire on her. At the time a wind was blowing from the north. When the tug reached her, the bark was afire in her masts and rigging, and the intense heat from the rapidly burning wharf was scorching her side next to the wharf. No other tug or steam vessel able to move the bark was near or available at the time, and she must have been very speedily destroyed, with her cargo, if the Echo had not acted promptly. The delay of a few minutes at this time must have rendered all efforts to save her fruitless.

The testimony in reference to the value of the bark varied greatly, ranging all the way from $1,500 up to $10,000; but the agent of the Norwegian Insurance Company, Mr. Moller, who was present, defending the suit, testified that she was insured for about $23,000. It would seem, therefore, that $10,000 was not too high an estimate of her value at the time of the fire. The cargo saved was worth $9,825.97, making the total value of property saved by the Echo about $20,000. The fire, being in the masts and rigging of the Amity, rendered the task of extinguishing it difficult and hazardous to the Echo and her crew. The Echo sent her men with her hose up into the rigging of the Amity, to play upon the fire. The masts and spars were coated with paint and oil, and in some places covered with iron, inside of which the fire lodged and burned persistently. The crew of the Echo thus engaged were in constant danger from falling bolts, chains, and other pieces of rigging above them, and two or three of them narrowly escaped serious injury in this way. The tug Echo was worth at the time about $30,000, being large and powerful, and supplied with the latest improvements; and, though the danger to her was at no time great, yet she suffered somewhat from the intense heat at the wharf, and from falling fire and bolts after. The prompt and successful manner in which the bark was removed from the wharf, and the vigorous and successful method of extinguishing the fire on her, showed the Echo to be well equipped for such service, and to be manned by officers and crew skilled and fearless. The salvors were continuously engaged in their efforts to extinguish the fire from 11 o'clock a. m., on the 27th, to 5 p. m.; then went away for some three or four hours, but returned at the urgent request of the officers of the bark, and remained alongside of her until about 7 o'clock on the morning of the 28th, occasionally playing on the fire as it would break out afresh.

Salvors should not only be remunerated for risk of life and property, and for labor, privations, and hardships encountered, but the reward should be such as to furnish a sufficient incentive to similar exertions. See 21 Am. & Eng. Enc. Law, pp. 688, 689.

"The allowance for salvage should be sufficiently liberal to make every one concerned eager to perform the service with promptness and energy, and also to encourage the maintenance of steam vessels sufficiently powerful to make the assistance effective, but not so out of proportion to the service actually rendered as to cause vessels in situations in which it would be expedient that they should quickly accept the assistance to hesitate or to decline to receive it, because of its ruinous cost. Ehrman v. The Swiftsure, 4 Fed. 463."

After a deliberate review of the testimony, and a careful examination of the law, under the established doctrine so well expressed in the two paragraphs quoted, I am of the opinion that $5,000 will be a proper award in this case.

By agreement of proctors for libelant and interveners, filed December 26, 1894, it is stipulated that the amount of salvage recovered shall be divided so as to give the libelant two-thirds and the interveners one-third of the amount; the latter one-third to be divided among the crew of the tug Echo according to their respective wages.

John C. Avery, for appellant.

W. A. Blount and A. C. Blount, Jr., for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PER CURIAM. While the award for salvage against the ship appears to be high in reference to some of the values sworn to by witnesses in the case, yet the evidence, taken as a whole, is not so conclusive on the side of the claimant that we can find therefrom that the court below erred in the valuation fixed as the basis of award. On that basis, considering the value of the salving vessel, the risk it encountered in rendering the salvage services, and the complete success attending such services, the amount awarded cannot be characterized as excessive to such a degree as to warrant our interference. The decree appealed from is affirmed.