SIMPSON et al. v. DOLLAR et al.

DOLLAR et al. v. SIMPSON et al.

(Circuit Court of Appeals, Ninth Circuit. May 13, 1901.)

No. 675.

1. SALVAGE—AMOUNT OF COMPENSATION—REVIEW ON APPEAL.

Where there has been no mistake of fact or application of an unwarranted rule of compensation in arriving at an award for salvage services, and the amount cannot be clearly seen to be inappropriate, an appellate court will not disturb the decision of the trial court.

2. SAME.

A steamer worth $40,000 grounded on a bar at the entrance to a bay. The sea was rough over the bar, and the steamer lost her rudder. Although she succeeded in getting off the bar, her anchors failed to hold, and she was again driven upon it, and was pounding and leaking when, in response to her signals of distress, libelants' tug came to her aid. The tug pulled her from the bar, towed her to a place of safety, recovered her rudder, and thereafter rendered other services in assisting in her repairs and towing her to her port of destination. The tug put forth no extraordinary effort, and neither she nor her crew were subjected to unusual peril. The tug was valued at $25,000. *Held*, that an award of $1,000 for the salvage services, made by the district court, while lower than would have been justified, in view of the value of the vessels and the peril of the steamer, would not be disturbed on appeal.[1]

---

[1] Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.

Appeal from the District Court of the United States for the Northern District of California.

On the morning of August 31, 1898, the tug Columbia, which was maintained at Coos Bay, Or., as an emergency boat, and was the only tug in commission on or adjacent to the waters of that bay, left Empire City in charge of her master, with a deck-load cargo, consisting of 50,000 shingles and some general merchandise, and bound for Gardner, Or., a port some 20 miles to the northward. As she was coming out of the bay a steamer was sighted coming in from the ocean. The tug soon after sighting the steamer gave the usual signal of one whistle, to indicate her intention to pass on the port side of the incoming vessel. She proceeded on her course until she reached a point about 75 feet from the end of the jetty on the north side of the channel, when the master slowed down the speed of the tug until the incoming steamer was within a few hundred feet of her, when she went out over the bar to sea. About two minutes after passing the steamer, and while the tug was in the rough waters on the bar, her master heard signals of distress from the steamer, which he promptly answered; but, as the tug could not safely change her course while on the bar, she continued out to sea until she reached smooth water, when she turned and immediately proceeded to the assistance of the steamer, which in the meantime had twice again given signals of distress, which the tug answered. At this time the fog was thick, and the sea was breaking considerably in the channel, and it was quite rough on the bar. The tug proceeded at full speed towards the steamer, and found the latter out of the channel and aground on the north end of the south spit of the Coos Bay bar. The steamer had lost her rudder, and had backed off into deep water, where she had dropped her anchors; but the anchors failed to hold, and she was dragging them, and was being thrown on the spit against the breakers. Her anchor chains were extended into the channel at such an angle as to prevent the nearer approach of the tug. The latter was compelled to steam past the steamer without getting a line out. She turned and approached the steamer as near as possible. In the meantime the steamer had backed on the spit, was in shallow water, and was thumping badly and leaking. The master of the tug was afraid to approach nearer the steamer than about 400 feet. A line was run out from the steamer by the crew of that vessel, and was attached to a new 6-inch hawser by the crew of the Columbia. The hawser was then hauled aboard the steamer and was made fast. Thereupon the tug pulled the steamer off the spit, picked up her lost rudder, towed her up the bay to Marshfield, and rendered services to the master of the vessel in making repairs to his vessel, and on September 3d, after the steamship had been repaired, towed her from the beach to an anchorage in deep water, where her rudder might be shipped, and thereafter towed the steamer to the port of North Bend. The value of the steamer was about $40,000, and the value of the tug about $25,000. The owner and master of the tug libeled the steamer for salvage, and the claimants filed a cross libel for damages, alleging that the stranding of the steamer was caused by the negligence of the master of the tug in giving the former the signal to port her helm in the narrow, breaking channel. The district court dismissed the cross libel, and allowed the libelant salvage in the sum of $1,000, holding that in rendering the services for which salvage was claimed no extraordinary effort was put forth by the Columbia, and that neither the tug nor any of her crew was exposed to the slightest danger in making fast to the steamer or towing her to a place of safety; that the ordinary charge for such towage would be about $175. The libelants, dissatisfied with the award, bring their appeal to this court, and contend that, in view of the services rendered and the circumstances of the salvage, they should have been allowed a much larger amount; and the claimants appeal from the decree awarding the salvage and dismissing their cross libel.

Chas. E. Naylor, for appellants.
Nathan H. Frank, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the facts of the case as above, delivered the opinion of the court.

Upon a careful consideration of the evidence, we agree with the conclusion of the district court that the channel was sufficiently wide to permit the vessels to pass each other with safety, and that the accident to the Grace Dollar resulted from an error of navigation, and not from any fault or negligence of the master of the tug in giving the signal which he gave. There having been no risk to the tug or her crew in performing the salvage service in this case, the elements of salvage must be found in the value of the rescued vessel, and in the peril to which she was exposed. In the light of many of the precedents, the amount awarded seems low. We cannot say, however, that it is manifestly inadequate, or that the district court has adopted any erroneous principle in arriving at his conclusion. No exact criterion can be found for estimating the amount of salvage in any case. The judgments of courts must necessarily differ as to the precise amount to be allowed under given circumstances. Where there has been no mistake in fact, or application of an unwarranted rule of compensation in arriving at the award, and the amount allowed cannot be clearly seen to be inappropriate, the courts on appeal have been reluctant to disturb the decision of the trial court. The Bay of Naples, 1 C. C. A. 81, 48 Fed. 737; The Amity, 16 C. C. A. 170, 69 Fed. 110; The George W. Clyde, 30 C. C. A. 292, 86 Fed. 665; The Trefusis, 39 C. C. A. 96, 98 Fed. 314; The Emulous, 1 Sumn. 214, Fed. Cas. No. 4,480. Upon a careful consideration of the case, we find no sufficient reason for disturbing the award of the trial court. The decree will therefore be affirmed.

ROSS, Circuit Judge (concurring). I concur in the judgment in this case with some hesitation; for it seems to me, in view of the value of the tug and of the rescued vessel, and of the peril to which the latter was exposed, that the amount awarded the libelant by the court below is considerably less than it ought to have been. Nevertheless, under the rule upon the subject referred to in the opinion, I am not prepared to say that we ought to interfere.