## J. D. SPRECKELS & BROS. COMPANY *v.* THE BRITISH SHIP LOCH GARVE.

### October 3, 1912.

1. *Salvage—Distribution of salvage fund:* The old rule. of allowance of one-third of the salvage fund to the owners and two-thirds to

the crew "in ordinary cases" of salvage performed from sailing vessels, radically changed with the advent of steam vessels. Prevailing allowance being from one-fourth to one-third to the officers and crews; preponderance of ordinary cases favoring the one-fourth allowance, and one-fifth and one-sixth being sometimes given.

2. *Same—Same—Consideration of special services:* Special consideration is given to special services, like carrying a line attached to a hawser to a stranded vessel a hundred fathoms away, by boat in a dark and squally night.

3. *Same—Same—Person specially engaged for the salvage enterprise:* A person engaged specially for the salvage enterprise, included in the distribution of salvage money, the chance of making something by way of salvage in addition to his pay, having been held out to him by the master in engaging him.

4. *Same—Same—Disposition of amount not claimed:* The master not claiming salvage money the amount he would otherwise have received inures to the owners.

5. *Same—Same—Deck hands:* Favorable consideration of claims of deck hands discussed.

6. *Costs—Expenses—Transcript of testimony:* Cost of a transcript of testimony furnished to counsel as the trial proceeded and to enable them to handle the case to best advanage, approved as a necessary expense of litigation.

*W. T. Rawlins* for claimants.

*Holmes, Stanley & Olson* for J. D. Spreckels & Bros. Company.

DOLE, J. The above case was consolidated for trial with that of the *Inter-Island Steam Navigation Company, Limited, v. The Loch Garve,* and judgment rendered for the libelants in both cases, four thousand dollars being the amount of the judgment in this case.

Distribution having been made to the officers and crews of the steam vessels of the Inter-Island Steam Navigation Company, Limited, upon the report of the company, the officers and crew of the Intrepid, except the master, have come into court for such distribution as they may be entitled to, the owners of the Intrepid having so far failed to report thereon. Further testimony was taken and the matter submitted on briefs.

The case of *Sonderburg v. Ocean Tow Boat Co.,* 22 Fed. Cas. 795, No. 13,175 (1878), cited by counsel for the officers and crew, refers to the rule of dividing the salvage money equally between the owners on one part and the officers and crew on the other part, adopted in the circuit to which the court belonged. The circumstances of salvage vary so greatly in different cases that a fixed rule to be followed, even in "ordinary cases," as laid down by that authority, would seem to be sometimes unfair to the owners, especially when the salving vessel is a steamer.

The case of *The Pomona,* 37 Fed. 815 (1889), is a much more recent case than the *Sonderburg,* and the judge allowed one-fifth of the salvage to the officers and crew; this rating being on the ground that the salving ship was a steamer and there being "no danger or risk, or extra trouble to the crew."

[1]   The old rule of allowing one-third of the salvage to the owners and two-thirds to the crew "in ordinary cases" (*The Blaireau,* 6 U. S. 143, 161,—1804; *The Camanche,* 75 U. S. 448, 473,—1869; *The Barque Island City,* 66 U. S. 121, 129,—1861), had begun to give way to the pressure for a larger proportion to the owners of salving vessels propelled by steam, even as far back as the trial of the last cited case, *The Barque Island City,* the decision whereof admits that in some of that class of cases the court might be justified in departing from the rule, although the point was not fairly raised in the pleadings in that case. It is perfectly obvious that with the application of steam power to vessels as a propelling agent, the rules of distribution of salvage awards must have become radically changed. Where formerly the main portion of the work in salvage cases was necessarily performed by the crews in windlass work, boat service, and, in some cases, navigating a partially disabled vessel into port, steam vessels now do all of this except the boat service, and do it much more effectively with their towing ability and their donkey engines. With this change in condi-

tions, the deck hands have much less to do than formerly, often but little outside of the necessary boat work, while the officers may have more or less according to circumstances. Thus the rule then recognized in France, England and the United States, and approximately followed, of one-third to the ship and two-thirds to the officers and crews, has become fairly obsolete. The much larger share is now generally given the owners of the salving ship and of the cargo, when the latter has been exposed to risk. Kennedy's Civil Salvage, 150-151; *The Enchantress,* Lush, 93, 96.

"The apportionment of the salvage will be influenced by the degree in which the ship on the one hand, and the personal services of the master and crew on the other, were instrumental in achieving the final result." Williams & Bruce, Adm. Jur. & Pr., 3rd ed. 171-172.

From one-fourth to one-third of the salvage fund represents the prevailing allowance to the officers and crews of salving steam vessels, with a preponderance of cases, perhaps, giving the one-fourth allowance, since 1883. Id. 172, note (s). *City of Paris,* 35 Shipping Gazette, Weekly Summary, 378 (1890); Kennedy's Civil Salvage, 154. Here and there are cases of allowance as low as one-fifth and one-sixth.

[2]   The work of the Intrepid consisted of the six and a half hours' trip at full speed to the Loch Garve and return to Honolulu, taking a line aboard the Loch Garve, adjusting the hawser, and pulling at the Loch Garve about seventeen and a half hours. The salvage work was performed mainly by the Intrepid; her officers, engineers and firemen having the burden of operating her. It does not appear that the rest of the crew had very much to do beyond boat work and handling the hawser. The man who carried the line attached to the hawser to the Loch Garve a hundred fathoms away, in the middle of a dark and stormy night, deserves special consideration.

An allowance of one-fourth of the salvage money is made to the officers and crew of the Intrepid. Deducting the ag-

gregate expenses of $1384.95 for the legal proceedings incurred by J. D. Spreckels & Bros. Company from the amount of the judgment of $4,000 in its favor, we have a balance of $2,615.05. One-fourth of this amount is $653.76, which is distributed as follows:

| Name | Position | Monthly Wages. | Distribution. |
|---|---|---|---|
| Captain Olson | Captain | $200.00 | $190.00 |
| Harry Gahan | Pilot and mate | 150.00 | 110.00 |
| Scott W. Ross | First deck hand and harbor mate | 75.00 | 55.00 |
| James Delaney | Chief engineer | 150.00 | 110.00 |
| John Sass | First assistant engineer | 100.00 | 75.00 |
| J. Johansen | Fireman | 50.00 | 20.00 |
| W. Widemeyer | Fireman | 50.00 | 20.00 |
| Tony Erickson, who carried the line to the Loch Garve | Deck hand | 45.00 | 20.00 |
| Andrew Knudsen | Deck hand | 45.00 | 13.00 |
| Mike McAvoy | Deck hand | 45.00 | 13.00 |
| Jim Sawata | Cook | 65.00 | 20.00 |
| Japanese Boy (name unknown) | Mess boy | 30.00 | 7.76 |

[3]   Counsel for the owners objected to any distribution to Harry Gahan, on the ground that he was employed for this special salvage trip and knew what services would be expected of him. It appears, however, from his testimony taken in the mattér of the distribution, that Captain Olson, in engaging him for the trip, said, "There's a show to make a piece of money for all hands." This is not rebutted. Whatever his regular pay was to be,—and there is evidence to the effect that that was five. dollars a day,—the chance to make salvage money was part of the inducement offered to and accepted by him.

[6]   Counsel for the crew objected to an item of $431.50, paid for transcript of testimony by the owners, and charged as part of the expenses of the litigation, on the ground that it was unnecessary, the testimony being set forth in the apostles. But the explanation of counsel for the owners shows this expense to have been incurred during the trial here, to enable counsel to refer to the evidence as the case proceeded and so to handle the case to the best advantage. The item is properly deducted, with other expenses, from the amount of the judgment.

[4]   As the master makes no claim for distribution, the amount set apart to him enures to the benefit of the owners.

[5]   Although the allowance of one-fourth of the net salvage to the officers and crew, gives on the whole a larger proportional distribution than in the one-fourth distribution already made to the officers and crews of the Inter-Island Steam Navigation Company's boats engaged in the salvage of the Loch Garve, it is necessarily so from the fact that the award to the Inter-Island Steam Navigation Company was cut down on appeal. There is no doubt that the crew of the Likelike and the three sailors of the Iwalani who brought the end of the four and a half inch hawser from the Loch Garve to the Iwalani, were much more entitled to consideration than the deck hands of the Intrepid, who are not reported as having done anything in particular, and

they have received a little more. It is not easy to adjust distribution in these cases with strict conformity to other cases. Conditions diverge, the salvage awards differ in amount, and those to be benefited vary in number and quality of merit. Although there is some room for argument from the distribution to the other crews, that the crew of the Intrepid should not receive a fourth of the net salvage fund, I do not see my way to reduce it. There is a still stronger argument that the other crews should have received a larger allowance than one-fourth, which might possibly have been the result had they been represented by counsel and had pushed their case. While deck hands do not have the opportunity on steam vessels engaged in salvage operations that they had on sailing vessels, yet the policy of treating them with generous consideration is one to be followed, in view of its stimulating influence upon their course of action when the occasion arises.