STEAMER AVALON CO. v. HUBBARD S. S. CO.

THE GENERAL HUBBARD.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1919.)

No. 3197.

1. SALVAGE ⬤⟶34—AMOUNT OF COMPENSATION—ADEQUACY OF AWARD.

An award of $2,000, salvage to a steamship worth $200,000, for towing another steamship with a broken crank shaft and worth, with cargo, $481,000, from a point 14 miles off the Oregon coast to Astoria, requiring

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

18 hours, although the weather was fair and there was little danger, *held* inadequate, and increased to $5,000.

2. SALVAGE ☞24—THEORY AND PURPOSE OF REMUNERATION.

Salvage is both compensation and reward, and, while it should not be extravagant, it should be liberal, to encourage prompt, energetic, and efficient service in the relief of vessels in peril.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Salvage.]

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Suit in admiralty by the Steamer Avalon Company against the American steamer General Hubbard; Hubbard Steamship Company, claimant. Decree for libelant, from which it appeals. Reversed.

Ira S. Lillick, of San Francisco, Cal., for appellant.

Edward J. McCutchen, Warren Olney, Jr., and Charles W. Willard, all of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. [1] About midnight July 24, 1916, the steamer General Hubbard, of the value of $465,000, carrying a cargo of lumber of the value of about $16,000, broke her crank shaft when proceeding southward along the Oregon coast, about 14 miles from Cape Meares. She sent up rockets to attract the attention of the lighthouse keeper at the cape, so that a steam tug might be sent out, whereby a request might be telephoned to the owners at Astoria, to send out a tugboat from Astoria. The steamer Avalon, valued at $200,000, carrying but 20 or 30 tons of cargo, proceeding northward on a voyage to Willapa Harbor, saw the signals and drew near, and, at the request of the captain of the General Hubbard, took the latter vessel in tow, had her in tow 18 hours, and left her at Astoria. The court below found that the services were salvage services, but that they were not attended by any special danger, and that the Avalon was entitled to an award of $2,000 for the service, including the services of her crew.

The appellant, on appeal to this court, contends that the amount awarded by the court below is inadequate. The evidence indicates that there was no danger that the General Hubbard would drift to the shore, since she lay 14 miles therefrom. She carried a deckload of lumber, and it was suggested by the appellant that, in case a northwesterly gale came up, she might drop her deckload and fill with water. But the weather was fair, and the evidence was that at that season of the year little danger was to be apprehended of stormy weather. There was no entry in the logbook of either vessel to indicate any condition of peril. It appears, however, that in entering the Columbia river a strong current was met, which impeded progress, and for half an hour prevented headway. The captain of the Avalon testified as to the danger of this particular part of the operation, and said:

"It would not have taken but very little, and she would have gone on the south jetty, and she would have taken me with her."

The officers of the General Hubbard, however, contradicted this testimony, and the finding of the trial court that no special danger attended the salvage service must be accepted as conclusive on this appeal.

The elements of salvage service here to be considered, therefore, are limited to the labor performed by the salvors, the value of the property which they employed in the service, the value of the property salved, and the degree of danger from which it was rescued. It is evident that a disabled steamship, without wireless equipment, lying in the trough of the sea, unable to keep her head up to the wind, and carrying a deckload 16 feet high, is in some degree of peril. The peril in this instance was diminished by the fact that there was little wind or sea, and there was reasonable expectation of a continuation of favorable conditions, and the steamship lay in an ocean path not infrequently traveled by vessels.

[2] This court has repeatedly applied the rule expressed in Simpson v. Dollar, 109 Fed. 814, 48 C. C. A. 663, where we said:

"No exact criterion can be found for estimating the amount of salvage in any case. The judgments of courts must necessarily differ as to the precise amount to be allowed under given circumstances. Where there has been no mistake in fact, or application of an unwarranted rule of compensation in arriving at the award, and the amount allowed cannot be clearly seen to be inappropriate, the courts on appeal have been reluctant to disturb the decision of the trial court."

But salvage is both compensation and reward, and while it should not be extravagant, or such as to excite greed, it should be liberal, to encourage prompt, energetic, and efficient service in the relief of vessels in peril. Sonderburg v. Towboat Co., 3 Woods, 146, Fed. Cas. No. 13,175; Murphy v. Ship Suliote (C. C.) 5 Fed. 99; The Blackwall, 10 Wall. 1, 14, 19 L. Ed. 870. In the latter case it was said:

"Compensation as salvage is not viewed by the admiralty courts merely as pay, * * * but as a reward given for perilous services, voluntarily rendered, and as an inducement to seamen and others to embark in such undertakings to save life and property."

Notwithstanding that the services were not perilous in the case at hand, the circumstances present a salvage case of merit, entitling the salvor to a fair reward for efficient and successful services in rescuing property of great value. The sum awarded is so low as to constitute no appreciable reward for salvage. It is little, if any, more than remuneration to the appellant for time, expenses, and the use of means, if we take into account the earning capacity of vessels engaged in the coastwise trade in the summer of 1916. We think the award is so low as to involve a misapplication of the law of salvage, and that a fair award would be not less than $5,000.

The decree is reversed, and the cause is remanded, with instructions to enter a decree for the appellant in the sum of $5,000.