TEXAS CO. v. TEXAS & GULF S. S. CO. et al.

THE COLONEL MOORE.

(Circuit Court of Appeals, Fifth Circuit. March 5, 1920.)

No. 3435.

1. SALVAGE ☜26—AWARD SHOULD BE SUFFICIENT TO RECOMPENSE AND EN-
COURAGE SALVORS.
    Though a salvage service is of a low order, the award should be suf-
ficient to fully recompense the salvors for the time and labor expended,
the danger to life and property incurred, and to encourage others in like
circumstances to render such assistance.

2. SALVAGE ☜34—$1,700 FOR TAKING UP AND TOWING DRIFTING BARGE HELD
ADEQUATE.
    An award of $1,700 to the owners, master, and crew of a new iron
tank steamship, worth from $2,250,000 to $2,500,000, with a cargo worth
about $300,000, for taking up and towing to a place of safety a wooden
barge, found adrift, and worth about $50,000, with a cargo of about 6,000
barrels of oil, held adequate, where there was no great danger to life
or property in rendering the service.

3. SALVAGE ☜34—COMPENSATION FOR TOWING DRIFTING BARGE NOT FREIGHT
EARNED PER HOUR MULTIPLIED BY HOURS OF DELAY.
    The amount of freight which a steamship was earning per hour, mul-
tiplied by the number of hours she was delayed in towing to a place of

safety a barge found adrift, cannot be adopted as the measure of compensation for the time lost, in view of the delays incident to all sea travel.

4. SALVAGE ⊜⟹34—AWARD FOR TIME LOST IN TOWING A DRIFTING BARGE HELD INADEQUATE.

An award of $1,000 for the time lost by an iron tank steamship, in towing to a place of safety a barge found adrift, causing a delay of 22 hours and 40 minutes, *held* inadequate, and to be increased to $3,500.

5. SALVAGE ⊜⟹26—VALUE OF HAWSER RENDERED WORTHLESS IN TOWING BARGE FOUND ADRIFT WAS PROPER ITEM.

Where a hawser, used by a steamship in towing to a place of safety a barge found adrift, was rendered worthless by being strained, its value was a proper item of expense incurred in rendering the service.

Appeal from the District Court of the United States for the Southern District of Alabama; Robert T. Ervin, Judge.

Libel by the Texas Company against the Texas & Gulf Steamship Company, claimant of the barge Colonel Moore, and others. From a decree for an insufficient amount, the libelant appeals. Modified and affirmed.

John D. Grace, of New Orleans, La., and Harry T. Smith and Wm. G. Caffey, both of Mobile, Ala. (John D. & M. A. Grace, of New Orleans, La., and Smith & Caffey, of Mobile, Ala., on the brief), for appellant.

Wm. B. Lockhart, of Galveston, Tex., and Palmer Pillans, of Mobile, Ala. (Harrington, Bigham & Engler, of New York City, on the brief), for appellees.

Before WALKER, Circuit Judge, and GRUBB and CALL, District Judges.

CALL, District Judge. Libel was filed by the Texas Company, as owner of the steamship New York, on behalf of itself and the master and crew then serving on said steamship, against the seagoing barge Colonel Moore, owned by the Texas & Gulf Steamship Company, claiming salvage. Upon the hearing in the District Court a decree was entered, giving the steamship and owners $400, with interest, for the hawser used in the service, and $1,000, with interest, for the time lost by the steamship in deviating from her course. The court allowed the further sum of $1,700, with interest, for the salvage service performed, to be divided, two-thirds to the owners and steamship, and one-third prorated among the then crew according to the pay then received by each. From this decree libelant appealed, and it is upon this appeal the cause is heard.

There are five assignments of error, but we deem it unnecessary to set them out here, as the effect of each is to question the correctness of the finding of the District Court of the amount awarded. The facts appearing from the record may be stated as follows:

On November 10, 1916, the tug Senator Bailey left the port of Tampico on a voyage to Tampa, Fla., towing tandem two oil barges, the Colonel Moore, with a crew of eight, and the American—the Colonel Moore having the towline from the tug, and the American

having a towline from the Colonel Moore; the towline from the tug being a wire cable, and the towline from the Moore to the American a 10-inch manila hawser. The Moore was without masts and had no propelling devices. The American had masts and sails, and could by this means aid herself to navigate. The voyage proceeded without mishap until the morning of November 15th, when the wire cable by which the tow was held to the tug parted, and the barges went adrift. Thereupon the crew of the Colonel Moore cut the towline between the two barges to prevent their colliding. At this time it was blowing hard and the seas were running high, so much so that the tug found it impracticable to again make the towline fast to the Colonel Moore. The tug then sought shelter under the lee of Ship Shoals, where she remained until next morning, when the weather had moderated. From the morning of the 16th the Senator Bailey sought for, without success, the barge, in the meantime calling for assistance in the search from her owners and the government. This search continued until the afternoon of November 21st, nothing having been learned of the whereabouts of the barge until the receipt of a wireless from the New York on that day. The barge was adrift, helpless upon the Gulf of Mexico, from the morning of the 15th to the afternoon of the 21st, her rudder having been carried away and her stern post split by the heavy weather encountered, and without any means of navigation.

On the afternoon of the 21st the tank steamer New York, with a full cargo, on a voyage from Port Arthur, Tex., to Providence, R. I., sighted the barge with her ensign upside down, a signal of distress, changed her course, and spoke her. The steamship approached within such a distance that a heaving line was thrown from the steamship to the barge, and by this means a new 8-inch hawser belonging to the steamship was passed to the barge and made fast, and the steamship then proceeded to tow her to the Southwest Pass, some 60-odd miles to the northward. Prior to the time of sighting the barge the steamship had, through her wireless, received warnings from the Weather Bureau of the probability of a storm in the Gulf. The tow proceeded during the night of the 21st, until next morning, when in sight of the Southwest Pass lightship the hawser parted near the bow of the barge, and something like an hour was spent before it was again made fast to the barge by the same means as was used in the first instance. During the night the wind had freshened and the seas had become heavier, so that there was more difficulty experienced in getting the line aboard the barge than at first. The steamship then proceeded, and at about 10:30 that morning delivered the barge to the Bailey off the lightship. The time consumed in rendering the service and getting back on the course of the steamship is admitted to have been 22 hours and 40 minutes; 17 hours of this time in actual towing. The absence of a rudder, and location of the towline in the port bow chock of the barge caused her to sheer to starboard while being towed, and thus increased the difficulty of the service.

The New York was not provided with the paraphernalia usually used in sea towing, but had on several occasions towed oil barges for her owner. The barge, when picked up, was leaking some, more especially aft, where the fresh water was carried. The New York was a new iron tank steamship of some 10,000 tons dead weight capacity, and valued at from $2,250,000 to $2,500,000, with a cargo of oil and other merchandise belonging to her owners of about $300,000. The Colonel Moore was a wooden barge, built for carrying oil in bulk, of the value of about $50,000, with about 6,000 barrels of oil then in cargo. Twelve hundred barrels of this had been pumped overboard by the crew while adrift to prevent the seas breaking over her. After the Bailey received the barge from the New York the tug took her into the river, where they remained for several days, until stores were taken on and the weather was propitious; the voyage then proceeded, and the barge was towed to Port Tampa, Fla.

There can be no question but that the service rendered in this case was a salvage service. Indeed, the appellees do not contest this. Nor is there any question but that it was meritorious and promptly and efficiently rendered. The question raised is as to whether it is of a high or low order of salvage.

• We fail to find in this record any great danger to life or the property of the salvors in rendering the service; nor do we find any great bravery or heroism displayed by the master and crew of the salving steamship. While something is said of the seas breaking over the steamship and barge during the tow, yet this is not remarkable, when the fact that the freeboard of the steamship was some 6 feet amidships and a little more forward, and the freeboard of the barge some 10 or 12 inches. It is to be expected and a usual occurrence with vessels with so little freeboard when navigating the open sea. Nor do we perceive any great danger incurred by the steamship of fouling her propeller, either by the slacking of the towline or the parting of same. She had an overhang aft of from 30 to 50 feet.

Nor do we think there was danger of straining the fabric of a 6 months old iron steamer of her burden in towing a barge of the size of the Moore with an 8-inch manila hawser, even though the steamer was not equipped with the devices for sea towing. Surely such dangers are more fanciful than real; nor does the danger of passing the towline to the barge on the two occasions impress us as being very great. The weather was smooth the first time, there being only the usual ground swell, and the feat accomplished without difficulty. The second time it appears it was more difficult, by reason of the increase of wind and sea; but the whole time consumed from the parting of the hawser until the tow was continued was only about an hour. Surely, had the sea been so heavy this last time as to have seriously endangered the safety of the steamship in approaching near enough to throw a heaving line to the barge, the master ot the New York would have passed his line by other means, of which there are several others than having a gun aboard to shoot it.

[1] We therefore agree with the District Court that this is a salvage service of a low order, but that the award should be in an amount

which not only will fully recompense the salvors for the time and labor expended, danger to life and property incurred in rendering such service, but will encourage others in like circumstances to render such assistance in saving life and property.

[2] We think the allowance of $1,700 by the District Court is correct, and is in consonance with the decided cases. The Catalina, 105 Fed. 633, 44 C. C. A. 638; The New Camelia, 105 Fed. 637, 44 C. C. A. 642; The Hesper (C. C.) 18 Fed. 696; The Viola, 55 Fed. 829, 5 C. C. A. 283; The Gen. Hubbard, 255 Fed. 854, 167 C. C. A. 182. The libelants will therefore be allowed the sum of $1,700, with interest at the rate of 6 per cent. from November 22, 1916, to date; said amount to be divided two-thirds to the steamship and one-third to the master and crew, to be divided pro rata according to the wages then earned by each.

[3] We come now to consider the award of $1,000 awarded the ship and owner for loss of time and deviation from her course. The appellant contends that the measure of the compensation to be allowed is the freight the vessel was then earning on the voyage; the amount of such freight to be figured by taking the time of the voyage and the freight earned, and reduce the earnings for each hour of the voyage, and multiply this hourly earning by the number of hours of the delay. We cannot assent to this for the true measure. There are too many elements of uncertainty in any such measure. The delays incident to all sea travel are too numerous to admit of the application of any such measure.

[4] It is admitted in the record that by this deviation the New York lost 22 hours and 40 minutes in the time of her voyage to Providence. No special loss by reason of the delay is contended for. No special dangers, other than those before referred to, are claimed to have resulted from the delay. In fact, the claim is that the vessel lost the hours from her sailing time on this trip, and it is for this loss she is to be compensated. The District Court awarded $1,000 as such compensation. This we think was too little. We think $3,500, with interest as above allowed, is a proper award to compensate the ship and owners for this deviation and loss of time.

[5] The hawser used in towing the barge is complained to have been made worthless by being strained, and to have been of the value of $386.42. This is a proper item of expense incurred in rendering the service, and is also awarded, with interest as above, to the steamship and owners.

The decree of the District Court, as modified herein, will be affirmed; the costs of this appeal to be taxed against the appellee.