CAPE FEAR TOWING & TRANSPORTATION CO. v. PEARSALL et al.

(Circuit Court of Appeals, Fourth Circuit. November 1, 1898.)

No. 265.

1. ADMIRALTY—REVIEW ON APPEAL—DISCRETION AS TO OPENING DEFAULT.
   The opening of a default in admiralty being discretionary with the court, under admiralty rule 39, a ruling on a motion to that end is not reviewable on appeal.

2. SAME—DECREE PRO CONFESSO—ASSESSMENT OF DAMAGES.
   After a decree pro confesso on a bill in admiralty, as in equity, the amount of damages must be determined by the court from the evidence, and not from the allegations of the libel.

3. SALVAGE—DIVISION BETWEEN OWNERS AND CREW—REVIEW.
   There is no fixed rule governing the division between the owners and crew of a vessel of the amount received or awarded for salvage services, and, where the division made by the trial court can be justified by the rules of law on any reasonable view of the case, it will not be disturbed on appeal.

4. SAME—BASIS OF DISTRIBUTION AMONG CREW.
   The respective wages received by the members of the crew of a salving vessel affords a proper basis for the distribution between them of the share of the salvage awarded to them.

5. SAME—DIVISION IN PARTICULAR CASE CONSIDERED.
   Where salvage operations were conducted from the home port of the owners of the salving vessels, and directed by them, and the services involved no special danger to either vessels or crews, a division of the salvage giving the owners two-thirds, and distributing the remaining one-third among the crew in proportion to their wages, will not be disturbed on appeal.

Appeal from the District Court of the United States for the Eastern District of North Carolina.

This case comes up on appeal from the district court of the United States for the Eastern district of North Carolina, sitting in admiralty. The libel is filed on behalf of Edward Pearsall, engineer, and John S. Brogan, fireman, of the steamtug Jacob Brandow, and J. N. St. George, cook of the steamtug Blanche, and Ephraim Swain, fireman of the steamtug Alexander Jones. These three tugs were engaged in salving the steamship Ardrishaig on the 27th of January, 1897, ashore on the east side of Frying Pan shoals. The owner of the tugs effected a settlement with the owners of the steamship, and received the sum of $13,000, in full of all demands. The libelants claim a share in this award. The libel was filed by the libelants named on

the 3d of November, 1897. Monition was made returnable on the 10th November thereafter. Respondent entered no appearance, and filed no answer or defense to the libel at the return of the monition. On the evening of that day the clerk of the district court received a postal card from the proctor of the respondent, saying, "Defendant appears, and asks for thirty days to answer." He filed no stipulation, and gave no security for costs. Meanwhile the proctor for libelants, upon the return of the monition, had entered in the order book a motion for a decree pro confesso, and thereupon gave notice to the proctors of the respondent that on the 29th of November he would call up the cause, and ask for a decree therein. The court met on the 29th November, and sat for one week. On the last day of the term the proctor for the libelants asked for, and obtained from the court, a final judgment pro confesso upon default of the respondent. The court decreed that the owner of the tugs was entitled to two-thirds of the salvage award, and ordered the remaining one-third to be distributed among the masters and crews of the tugs proportionately, and thereupon referred it to a commissioner to take testimony for the purpose of ascertaining the respective shares of the masters and crews. On the 7th of December the respondent, making special appearance for that purpose, filed a petition with the court, asking that the judgment pro confesso be set aside, and, if that was refused, prayed further relief in the matter. On the 15th December the proctor for respondent filed an affidavit giving certain reasons for his failure to be present or to take exception when the order was presented to the court on the last day of the term, and thereupon prayed that the default be set aside, and that he be allowed to answer; and on the same day he filed exceptions to the libel. On the 16th February, 1898, respondent entered a stipulation for costs, and on the 24th February, 1898, he filed certain exceptions to the libel, and gave notice of a motion to strike out the default; and with that he prepared an answer to the libel, with an affidavit explaining again why he had not acted more promptly. His honor, the district judge, refused to set aside the default, or to grant any of the motions or prayers of the respondent. Pursuing the order of the court, the commissioner made his report on December 15, 1897; and, upon consideration thereof, the court, by decree dated February 22, 1898, awarded to the libelant Edward Pearsall, as his share of the salvage money, $500; John F. Brogan, $200; J. Newton St. George, $200; and Ephraim Swain, $200. This award was made in proportion to their wages. The commissioner, having first fixed the ratio to which each tug was entitled in the whole award, reported the facts, upon which the court fixed the distribution of the one-third of the whole salvage award allowed to the masters and crews of the tugs as their share therein. In due course an appeal was allowed from the decree of the court, and it is here on the assignments of error. These assignments of error are 14 in number. They go to the entering of the decree pro confesso; to the refusal of the court to entertain the motions to set it aside, or to listen to the exceptions; to the giving the libelants any share in the sum awarded to the owners of the tugs; to the amount decreed in favor of the libelants; and also an exception to the whole proceeding, that upon the case made by the libelants the court should have dismissed the libel.

Iredell Mears (Thomas Evans, on the brief), for appellant.

A. M. Waddell, for appellees.

Before GOFF and SIMONTON, Circuit Judges, and MORRIS, District Judge.

SIMONTON, Circuit Judge (after stating the facts). The twenty-ninth rule of the circuit court in admiralty provides as follows:

"If the defendant shall omit or refuse to make due answer to the libel upon the return day of the process, or other day assigned by the court, the court shall pronounce him to be in contumacy and default; and thereupon the libel shall be adjudged to be taken pro confesso against him, and the court shall proceed to hear the cause ex parte and adjudge therein as to law

and justice shall appertain. But the court may, in its discretion, set aside the default, and, upon the application of the defendant, admit him to make answer to the libel at any time before the final hearing and decree, upon his payment of all the costs of the suit up to the time of granting leave therefor."

So, also, in rule 40 the following provisions are made:

"The court may in its discretion, upon the motion of the defendant and on payment of costs, rescind the decree in any suit in which, on account of its contumacy and default, the matter of the libel shall have been decreed against him, and grant a rehearing thereof at any time within ten days after the decree has been entered, the defendant submitting to such further orders and terms in the premises as the court may direct."

It will be observed that, in the first of these rules, upon the application of the defendant, and upon his payment of costs, the court, in its discretion, may set aside the default. On the second of these rules, the court, upon the payment of costs, may rescind the decree, in a suit, made against a defendant on account of his contumacy and default. So the matter lies in the discretion of the court, and in the exercise of this discretion the court refused the motions made by the defendant below. When a matter is in the discretion of the court, the exercise of that discretion is not reviewable in the appellate court. Thus, amendments to pleadings are within the discretion of the court, and its action granting or refusing such amendment cannot be reviewed in the supreme court of the United States. Bullitt Co. v. Washer, 130 U. S. 142, 9 Sup. Ct. 499; Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 10 Sup. Ct. 736. The granting or refusing of a new trial is within the discretion of the court, and its action cannot be reversed in the circuit court. Railway Co. v. Struble, 109 U. S. 381, 3 Sup. Ct. 270. Setting aside a default, like a motion for a new trial, lies entirely in the discretion of the trial court. Ex parte Roberts, 6 Pet. 216. So a motion for a change of venue is not reviewable. Kennon v. Gilmer, 131 U. S. 22, 9 Sup. Ct. 696. Nor the granting or refusing of a continuance. Means v. Bank, 146 U. S. 620, 13 Sup. Ct. 186. All questions as to surprise, as to reopening a case, as to the order of proof, are matters of discretion, not reviewable. Ames v. Quimby, 106 U. S. 342, 1 Sup. Ct. 116. Decisions which rest in the discretion of the court below cannot be examined in the appellate court. Cheang Kee v. U. S., 3 Wall. 320. And generally where the action of the inferior court is discretionary its decision is final. Earnshaw v. U. S., 146 U. S. 60, 13 Sup. Ct. 14. This motion to reopen the default having been within the discretion of the court below, its action cannot be reviewed here.

It is insisted, however, that the libel, as filed, does not state facts sufficient to sustain the action, and would have been open to demurrer, or a motion to dismiss. "Upon writ of error to reverse a judgment by default, defects in pleadings which could have been taken advantage of before judgment by general demurrer may be reviewed." McAllister v. Kuhn, 96 U. S. 87. The libel, although not as clear and distinct as it should be, does sufficiently show that the libelants were of the crews of the tugs which rendered the service, and that they did render the service at and during the salvage. Were the question

one for a jury, the jury could reasonably infer it.    This objection is overruled.

One of the assignments of error is as to the amount of salvage allowed the libelants.    The default admits all the facts stated in the pleading, but it does not admit the amount of unliquidated damages claimed.    In the libel filed in this case no specific amount is claimed. That is to be ascertained by the court.    In common-law cases, damages after a default must be found by a jury.    Raymond v. Railroad Co., Fed. Cas. No. 11,593; U. S. v. White, Fed. Cas. No. 16,686.    And, as the effect of a default to appear in an admiralty proceeding is ordinarily the same as in other actions at law (Miller v. U. S., 11 Wall. 268) such damages must be found by the court upon the testimony taken (Hightower v. Hawthorn, Hemp. 42, Fed. Cas. No. 6,478b).    The rule in equity, which also is clearly applicable to admiralty, is thus stated in Ohio C. R. Co. v. Central Trust Co. of New York, 133 U. S. 83, 10 Sup. Ct. 235:

"A decree pro confesso is not a decree as of course according to the prayer of the bill, nor merely such as the complainant chooses to take it.    It should be made by the court according to what is proper to be decreed upon the statement of the bill assumed to be true."

The decree of the court below will be examined from this point of view.    We are not called upon to estimate the value of the salvage service rendered in this case.    The parties most concerned therein (the chief salvors and the salved) have fixed this value at $13,000. The questions to be dealt with are the interest of the crews of the tugs in this award, and the amount of such interest.    There can be no doubt that the crews of the tugs which did the salvage service are entitled to share in the award.    The Henry Ewbank, 1 Sumn. 400, Fed. Cas. No. 6,376; The Waterloo, 1 Blatchf. & H. 114, Fed. Cas. No. 17,257; The Leipsic, 5 Fed. 108, affirmed 10 Fed. 585; The Adirondack, 5 Fed. 215.    In the last two of these cases the owners of the salved vessel had done as was done in this case.    They pursued the claim for salvage in their own names, without joining the master and crew.    The proper practice was declared to be to apportion the entire amount, when ascertained, between the vessel, master, and crew, and to deposit the share of the master and crew in the registry to await their application therefor.    The rules governing the division of the salvage award between the owners of the salving vessel and its master and crew have been somewhat modified.    The later decisions are much more liberal towards the owners of the salving vessel. It is thus stated in The Pomona, 37 Fed. 816:

"Under the rule once prevailing in admiralty, the owners of the salving vessel could not receive more than one-third of the award (The Blaireau, 2 Cranch, 240; The Henry Ewbank, 1 Sumn. 426, Fed. Cas. No. 6,376; The Cora, 2 Wash. C. C. 80, Fed. Cas. No. 1,621), unless there were unusual circumstances of peril to the salving vessel (The Henry Ewbank).    In The Island City, 1 Black. 129, it seemed to be admitted that where the salving vessel was a steamer, and so capable of rendering the most efficient aid, her proportion should be greater; and this is recognized in The Raikes, 1 Hagg. Adm. 246; The Earl Grey, 3 Hagg. Adm. 363; The Beulah, 1 W. Rob. 477; Brooks v. The William Penn, 2 Hughes, 144, Fed. Cas. No. 1,965.    In The C. W. Ring, 2 Hughes, 99, Fed. Cas. No. 3,525, decided by Judge Bryan, late judge of this district, as referee, before his court was organized, in 1866, the question

was considered, and the proportion of the salving vessel—a steamship—in the award was raised to three-fifths. In The Leipsic, 5 Fed. 108, Judge Choate, of New York. had this question before him. The circumstances of that case were almost the same as in the case of The Pomona. A steamship, disabled because of a broken shaft, dependent upon her sails, which were injured, was rescued by a passing steamer; there being no present, imminent danger to the salving vessel or her crew; the essential feature of the service being its prompt and efficient action. Judge Choate allowed the salving steamer three-fifths of the award. He adopted the same rule in The Adirondack, 5 Fed. 215."

In the case of The Leipsic, on appeal, Judge Blatchford increased the award, and allowed the salving steamer three-fourths. 10 Fed. 585. In the case of The Pomona the proportion allowed to the salving vessel was four-fifths. In the case at bar the court below allowed two-thirds. An examination of the cases will show that there is no fixed rule with regard to the proportion in the salvage award allotted to the owners of the salving vessel. Most frequently salvage services are rendered upon a voyage, in the absence of the owners, and when the salving vessel is under the charge of, and is controlled by, the master and crew. As salvage is awarded for the encouragement of promptness, energy, efficiency, and heroic endeavor in saving life and the property in peril, the claims of the master and crew who exhibited these qualities must meet the most favorable consideration. At the same time an allowance is made for the owners whose property has been imperiled. But when the owners direct the service, or when the peril encountered is chiefly that of the salving vessel, with no proportionate peril to the crew, an award to the owners is more liberal. An instance of this is The Edam, 13 Fed. 137. In the case at bar salvage service was rendered at the home port, the residence of the owners of the tugs. There was no exposure to any unusual peril of life. A very important part of the work—the removal of the cargo of the salved vessel—was rendered by laborers specially hired by the owners of the tugs for this purpose. During the progress of the salvage services the libelants were discharging their ordinary vocations under the pay of the owners. From these circumstances it would appear that the proportion sometimes allowed the master and crew—two-fifths—would be too large for the services rendered on this occasion. The court below evidently had this in mind, and allotted one-third instead of two-fifths. It may be that we might be inclined to think that even this was too large, but it is not so excessive as to require a modification of the conclusion reached by him. A decree in a salvage case will not be altered on appeal, as to amount, if it can be justified by rules of law on any reasonable view of the case. The Excelsior, 123 U. S. 40, 8 Sup. Ct. 33. In making his distribution of the share allotted to the masters of the tugs and the crews of the tugs only, the presiding judge made the distribution in proportion to the wages received by them, respectively. In this he is sustained by the authorities. In Brooks v. The William Penn, 2 Hughes, 144, Fed. Cas. No. 1,965, the salvage award was distributed between the master and the crew with regard to their responsibility in their different stations. In Sewall v. Nine Bales of Cotton, Fed. Cas. No. 12,683, the distribution was in proportion to the wages. This was adopted as a just and uniform rule in all ordinary cases.

The same rule was followed in The New Orleans, 23 Fed. 909, and in The C. W. Ring, supra, and also in The Pomona, 37 Fed. 816. See, also, Cohen, Adm. 149. The motion made by the appellees to dismiss the appeal is refused. The decree of the district court is affirmed, with costs. Affirmed.