LOMBARD S. S. CO., Limited, et al. v. ANDERSON.

(Circuit Court of Appeals, Fourth Circuit.  November 15, 1904.)

No. 540.

**1. SEAMEN—MASTER OF TRAMP STEAMSHIP—RIGHT TO DISCHARGE.**

The master of a steamship seeking cargoes wherever they can be obtained, who is not employed for any particular voyage or for any stated time, may be discharged by the owners at any time, without assigning any cause and without incurring liability for damages, unless they have surrendered that right by the contract of employment.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, § 250.]

**2. SAME—WAGES—DISCHARGE IN FOREIGN PORT.**

Where, by his contract of employment, the master of a steamship was to be returned to the port of shipment at the termination of his employment, and he was discharged at a foreign port, he is entitled to recover wages until his arrival at the port of employment, and the expense of his passage there.

**3. SAME—EXPENSE OF SICKNESS.**

A seaman is not entitled to recover from the owner of the vessel the expenses incident to his sickness, occurring after his rightful discharge in a foreign port, although he may, under his contract, be entitled to wages until his arrival at the port of his employment.

**4. SAME—ALLEGED NEGLIGENCE OF MASTER—EVIDENCE CONSIDERED.**

Evidence considered, and *held* insufficient to sustain allegations of negligence or incompetence on the part of a master in connection with the grounding of his vessel in a strange harbor, such as to entitle the owners to recoup the damages sustained by them against his claim for wages.

Appeal from the District Court of the United States for the District of Maryland, in Admiralty.

Edward I. Koontz (George Whitelock, on the brief), for appellants.

George T. Mister (Beverly W. Mister and A. Partlett Lloyd, on the brief), for appellee.

Before GOFF, Circuit Judge, and BRAWLEY and PURNELL, District Judges.

GOFF, Circuit Judge.  This appeal is from a decree rendered by the District Court of the United States for the District of Maryland against the respondents below for wages due the libelant as master of the steamship Salamanca, as well as for board bills and passage money from the port of his discharge back to the port of shipment.  The libelant, who had been master of said steamship more than two years, was discharged at Manila on September 12, 1902.  The Lombard Steamship Company, Limited, was the owner of said steamship, and John White was managing owner thereof.  The master claimed in his libel that he was entitled to have his passage paid to New York City, where he was employed, and wages up to the date of his arrival at that port, as he was dismissed abroad; that soon after being so employed he took charge of said steamship, and remained in command of her until dismissed; that on being so discharged he proceeded with all dispatch to the said port of New York, where he arrived December 22, 1902; that, in addition to the sum so due him as wages, he paid his passage money home, and that he also paid for his board and lodging in Manila,

and for fees, medicine, and attendance in a hospital at that point; that the owners of said ship refused to pay him said sums so due him; and that he placed his damages at $1,250.

The respondents claimed that the master was discharged because of his incompetency, and on account of his careless management of the steamer, and also for the reason that he was habitually intoxicated. They charged that because thereof the steamer was damaged by being stranded on a reef in the harbor of Masinloc, to the great loss of the owners, and that there was nothing due him by them on account of wages, or for any other cause whatsoever. Much testimony was taken and considerable documentary evidence introduced, when the court below, on a hearing, rejected the libelant's claim for expenses incurred because of his sickness in Manila, but allowed his wages as master, as claimed by him, and also his traveling expenses from Manila, the place of his discharge, to New York, the port of his shipment.

The appellee did not prove that he had been employed as master for any particular voyage, nor for any special period of time. The steamer sought employment wherever it could be obtained, and at the time the master was discharged it was under charter for use in Philippine and Chinese ports.

The owners of the steamship had the right to remove the master at any time, and that without assigning any cause, and without being liable for damages, unless they had, by the terms of their contract with him, yielded that right, which it seems they did not do. The absolute right of the owners of such a vessel to remove the master, with or without cause, is incontestable. Montgomery v. Wharton, 2 Pet. Adm. 397, Fed. Cas. No. 9,737; Clayton v. Schooner Eliza B. Emory (C. C.) 4 Fed. 342; Montgomery v. Henry et al., 1 Dall. 50, 1 L. Ed. 32, 1 Am. Dec. 223.

It is quite clear from the evidence that the master was to be returned to New York at the end of his employment, and consequently he is entitled to be reimbursed the expenses incurred by him for that purpose. The sum paid by the master for hospital and medical charges were because of sickness from which he suffered subsequent to his discharge, and, even if the rule applied that a seaman taken sick while in the service is entitled to medical attention at the expense of the ship, it would not cover this case, where the sickness did not occur while he was in the service.

In our opinion, the testimony does not sustain the allegations in the answer that the master was either careless or incompetent, nor does it show that he was habitually intoxicated. So far as the grounding of the vessel on the coral reef in the harbor of Masinloc is concerned, the testimony fails to show either negligence or misconduct on his part, and the only witness examined who was with him at the time of the accident expressly denies that he was intoxicated. He had the services of a pilot when he entered that harbor—a native pilot, whose services he was not permitted to retain. There was no chart of the harbor, nor buoys, and no lights in it, and no marks of any kind except natural objects. He had never been in the harbor before. He requested that a pilot take him out, and the agent of the charterer furnished one for that purpose—one who had surveyed the harbor, and who was supposed

to be thoroughly competent. While there is some conflict in the testimony between the master and this pilot as to what occurred at the time of the grounding of the vessel, we find nevertheless from it that the accident, if not caused by the mistake of the pilot, was the result of an error of judgment on the part of the master. The master had had experience for many years on the sea; he had been in the service of the appellants for a long time; and evidently possessed their esteem and confidence; and his good faith and discretion should not be questioned simply because of the unfortunate results attending the sailing of the vessel from Masinloc Harbor. In order to sustain the charge of incompetency against the master, the evidence should be clear and satisfactory; the onus probandi, as a matter of course, being on the owner. The Camilla, Swabey, 312; The Atlantic, 9 Jur. N. S. 183.

Finding as we do that there was not either negligence or misconduct on the part of the master, it follows that there was no forfeiture of the wages due him, and that the respondents were not entitled to recoup against him the damages claimed by them to have been caused on account of the grounding of the vessel.

The weight of the testimony shows that the master was entitled to recover his wages from the time of his discharge to the time he reached the port of New York, and also his necessary traveling expenses while making that journey.

The assignments of error are without merit, and the decree appealed from is affirmed.