### UNITED STATES v. NELSON et al.

### THE CITY OF OMAHA.

(Circuit Court of Appeals, Ninth Circuit.   December 5, 1921.)

No. 3687.

1. Salvage ⊜⟹13—Towing steamship vessel into port held salvage service of low order.

Where a steamship valued at $1,920,000, with a cargo worth $606,475, while at a point in the open sea about 151 miles from San Blas and 243 miles from Manzanillo, which was directly in the path of vessels en route between the United States ports and the Canal Zone, was unable to proceed because the boilers failed entirely, and had to be towed into port by another steamship, the service rendered was a salvage service, although of low order.

2. Salvage ⊜⟹34—Award for salvage service sustained.

Where a disabled steamship was towed for 2½ days, causing the towing vessel to lose that much time, and involving an extra consumption of 550 barrels of fuel oil and 10 gallons of engine oil, and provisions and wages for the crew covering 2½ days, the weather being fair, so that the towing vessel was at no time in danger, an award of two months' pay, on a libel for salvage filed by the first, second, and third mates and 24 members of the crew of the towing vessel, will not be disturbed.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Libel by R. J. Nelson and others against the United States to recover for salvage services rendered the steamship City of Omaha. Decree for libelants, and the United States appeals. Affirmed.

John T. Williams, U. S. Atty., and Frederick Milverton, Sp. Asst. U. S. Atty. in Admiralty, both of San Francisco, Cal.

H. W. Hutton, of San Francisco, Cal., for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge.   The steamship City of Omaha, belonging to the United States, of the approximate value of $1,920,000, and with a cargo of the value of about $606,475, while on a voyage from Baltimore, Md., to Yokohama and Kobe, Japan, had boiler and engine trouble before reaching Colon, and also after passing through the Canal, on the way to San Francisco, finding it necessary to put into the inner harbor of Salina Cruz, remaining there until May 17, 1920, while her boilers were undergoing repairs.   On that day she left that harbor and proceeded on her way, having further trouble, necessitating the stopping of her engines while boiler repairs were made at sea.

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

May 23 her master wirelessed the agents of the vessel at San Francisco for advice as to what should be done in the event that the boilers failed entirely, and on May 26 he again wirelessed the agents that the vessel was making very poor headway, and that the situation seemed to be getting worse, and asked for suggestions. In reply the agents wirelessed him that the United States Shipping Board had wirelessed the steamship Cockaponset and the steamship Diablo, also belonging to the United States, instructing the nearest of those vessels to proceed to Magdalena Bay and tow the City of Omaha to San Francisco, and directing the City of Omaha to call upon the navy for assistance, if necessary. That last-mentioned message was overheard by the Cockaponset, whereupon her master directed her wireless operator to call up the City of Omaha and ask if any assistance was required. This was done, and resulted in an affirmative reply.

The vessels were then about 20 miles apart, the Cockaponset arriving at the City of Omaha at noon May 29, 1920. At that time all of the boilers of the latter were out of commission, and she was steered by her aft hand gear. The Cockaponset then took the City of Omaha in tow and proceeded with her to San Pedro, Cal., where her towline was cast off at 6:30 a. m. of June 5, 1920. For two days, namely, May 31 and June 1, the City of Omaha was steered by steam, but during the remainder of the time her hand steering gear had to be used. During the time in question the Cockaponset was bound for San Francisco from Panama, and the approximate time she lost was about 2½ days, and involved only an extra consumption of 550 barrels of fuel oil and 10 gallons of engine oil, and provisions and wages for the crew covering 2½ days. She lost a log line and rotator because of the poor steering of the City of Omaha, but, the weather being at all of the time fair, the Cockaponset was at no time in danger. The towing lines were furnished by the City of Omaha and were passed by her crew to the Cockaponset. The disabled vessel was almost directly in the path of vessels en route between United States ports and the Canal Zone, and although when her boilers were out of commission she could not be lighted by electricity, yet she had oil lamps available. When the City of Omaha was reached by the Cockaponset, she was in the open sea 151.65 miles from San Blas, and 243.7 miles from Manzanillo, with a sound hull and with wireless on board.

The libel was filed by the first, second, and third mate and 24 members of the crew of the Cockaponset, each of whom was awarded two months' pay by the decree appealed from.

[1, 2] It is clear, we think, that the service rendered the City of Omaha was a salvage service, although of low order, and under the ruling of this court in the case of Steamer Avalon Co. v. Hubbard S. S. Co., 255 Fed. 854, 856, 167 C. C. A. 182, we do not think we would be justified in interfering with the award. It has often been said that appellate courts are reluctant to disturb the decision of a trial court in the matter of an award in a salvage case, there being no exact criterion by which such an award can be fixed.

The decree is affirmed.