BREVING et al. v. THE LLOYD CUARTO et al.

STATES MARINE CORPORATION v. THE LLOYD CUARTO et al.

THE CHRISTOPHER GADSDEN.

Nos. 25055–G, 25089–G.

United States District Court
N. D. California, S. D.
May 5, 1949.

Gladstein, Anderson, Resner & Sawyer, Herbert Resner, San Francisco, Cal., proctors, I. Duke Avnet and Edgar Paul Boyko, Baltimore, Md., of counsel, for libelants Peter Breving and others.

Lillick, Geary, Olson, Adams & Charles, Allan F. Charles, Edward D. Ransom, San Francisco, Cal. proctors for S.S. Cuarto and others.

Dorr, Cooper & Hays, San Francisco, Cal., proctors for Otis McAllister & Co. and others, cargo owners.

Graham & Morse, San Francisco, Cal., proctors for libelant States Marine Corporation.

GOODMAN, District Judge.

The libel is on behalf of the owner, Captain and crew of the American owned liberty vessel Christopher Gadsden for an award for the alleged salvage of the Panamanian merchant vessel Lloyd Cuarto and her cargo.

In response to an SOS call on May 29, 1947, The Gadsden turned from her course in Pacific waters about 160 miles off the Mexican coast and proceeded to The Lloyd Cuarto. The latter had a substantial list, her pumps were inoperative and her engine room was flooded. The Gadsden took off The Cuarto's 14 passengers and crew. It attached a tow line and towed The Cuarto a distance of 150 miles to the port of Manzanillo, Mexico. At Manzanillo, The Cuarto was cabled to The Gadsden, the water was pumped out and her cargo was removed.

At the trial of the cause, which consumed 10 trial days, 16 witnesses testified. The transcript is 808 pages long. It and 9 depositions in the English language totalling 975 pages and 12 depositions in Spanish totalling 218 pages, plus 55 exhibits, constitute the record in the case. The cause was argued both orally and in briefs filed by all parties.

If the Court were to go into evidentiary detail as to the condition of The Cuarto, the manner of and alleged danger attendant upon attaching the tow line, the attempt to prevent the ship from foundering, taking aboard the crew, the conduct and alleged acts of dominion of the Captain of The Gadsden over The Curato, the circumstances concerning the exclusion of the Captain and crew of The Cuarto from participation in the salvage and towage operation and the conduct of the Captains and crews of both vessels after they were tied up in Manzanillo, it would, in the opinion of the Court, require an unnecessarily long opinion. It will be sufficient if the Court indicates its conclusions upon the issues presented upon which the award depends.

Once The Cuarto was taken in tow, the actors appeared to center their thoughts upon considerations affecting the protection of the monetary rights and liabilities arising from salvage. Indeed, by the time the vessels were tied up in Manzanillo, a veritable horde of representatives and proctors of all parties descended upon Manzanillo. If I were a cynic, I might well say that the salvage fund, not unlike some other types of funds, was a "pot of honey" equally attractive to principals and advocates. The necessity for the presence of so many representatives and proctors, however, is justified by the claimants upon the ground that the vessel was of foreign registry and the financial responsibility of the owners, an unknown and uncertain quantity; upon the part of the respondents, upon the ground of the need of protecting their interests.

Respondents have raised the issue that The Gadsden's services constituted only towage and not salvage. But The Cuarto was listing, partly flooded, and unable to proceed under her own power. She was in distress. The Gadsden removed her passengers and her cargo. This was salvage. The Jean L. Sommerville, 5 Cir., 286 F. 35; United States v. Nelson, 9 Cir., 276 F. 706; Kittelsaa v. United States, D.C., 75 F.Supp. 845; It was still salvage, even though there may be an area of doubt as to its classification, i. e. "low order," "high order," etc. Rodriguez v. Bagalini, 9 Cir., 17 F.2d 921; The Jean L. Sommerville, supra; United States v. Nelson, supra.

The "order" of salvage bears only upon the value of the salvage service. It is one of the elements to be considered in fixing such value. The Kia Ora, 4 Cir., 252 F. 507, 508; Waterman S.S. Corp. v. Dean, 4 Cir., 171 F.2d 408, 411; The Blackwall, 10 Wall. 1, 77 U.S. 1, 14, 19 L.Ed. 870; The Wahkeena, 9 Cir., 56 F.2d 836, 838; Joncich v. Xitco, 9 Cir., 172 F.2d 1003.

Also bearing upon the value of the services of the Gadsden and its crew is the question as to whether The Cuarto was a derelict, or "quasi-derelict," as claimants assert. Generally the Courts appear to have decided that a vessel is not a derelict unless it has been abandoned.[1] What constitutes "abandonment" is a question of fact and varies somewhat from case to case. The facts here do not justify a finding of abandonment. This the Court has taken into account to the extent that it affects the award.

Another element affecting salvage awards is the duration of the salvage service. It has been said that the end of danger marks the end of the salvage service. Humphrey's et al. v. M/V Florence No. 2, 1948 A.M.C. 1221, 1224. The Gadsden brought The Cuarto into Manzanillo early in the morning of May 31, 1947. There is conflict in the evidence as to whether The Cuarto and its cargo was then safe. But certainly by June 4th the danger was over, according to Captain Breving, Tr. 315. I have considered this factor in determining the award.

Other well-standardized factors to be considered are: the nature of the efforts of the salvors, their skill, the value of the salving vessel, the dangers and risks confronting it, and the condition and extent of distress and value[2] of the salved vessel. The Blackwall, supra; The Wahkeena, supra; Joncich v. Xitco, supra.

Misconduct of the owners, Captain and crew of The Gadsden is urged as a lawful reason for forfeiture of any award, or if not forfeiture, suitable reduction of award. Serious or reprehensible misconduct, or bad faith justify forfeiture or reduction.[3] They are issues requiring factual resolution. Respondents claim The Gadsden's crew plundered The Cuarto, exercised unlawful dominion over it, excluded its crew, unduly retained possession, required a bond before surrender, asserted exaggerated claims and negligently damaged its hull.

The evidence is not at all persuasive either as to the extent of so-called plundering or as to the culprits. In fact there is evidence that some of the crew of The Cuarto were not blameless. Consequently I am disregarding the plundering charge in reaching decision.

There is no doubt that Captain Breving exercised dominion over The Cuarto and excluded its officers and crew. But only in small part was it the Captain's exclusive act. Rather was it in major part at the direction of The Gadsden owners.[4] In my opinion the evidence discloses these acts to be not of sufficient substance to work a forfeiture. They should be considered, and I have done so, in fixing the award, but mostly as against The Gadsden's owners. The Gadsden's crew obviously cannot be affected by these considerations.

That The Gadsden required a bond before releasing The Cuarto cannot have effect upon the award, inasmuch as The Cuarto left Manzanillo as soon as it was able. The Jean L. Sommerville, supra.

The contention that libelants have exaggerated their demands has slight merit, and does not reach a stature substantially affecting the award. After all, the parties congregated at Manzanillo and were vigorous in asserting and protecting their respective rights. The amount claimed in the suit is not, therefore, sufficient per se to justify any penalization. In this respect, this case is dissimilar to Rodriguez v. Bagalini, 9 Cir., 17 F.2d 921, cited by respondents, where suit was brought without previous notice and where there was fraudulent ex-

---

[1] The Island City, 1 Black 121, 66 U.S. 121, 17 L.Ed. 70; The Launberga, D.C., 154 F. 959; The Gerberviller, D.C., 34 F.2d 825.

[2] Agreed value of the Cuarto $115,000; of its cargo $357,675.69.

[3] Rodriguez v. Bagalini, 9 Cir., 17 F.2d 921; The Mabel, 9 Cir., 61 F.2d 537.

[4] Tr. 270, 272; Lib. Exhibit 1, J, 5–30–47; Lib. Exhibit 21, Log 6–9–47.

aggeration of the value of the vessels and other flagrantly false testimony.

Respondents claim, by way of cross-libel, damages in the sum of $25,726 for damages to the hull of The Cuarto alleged to have been caused by negligent towage and mooring on the part of The Gadsden. Credible evidence to support the allegation is absent. In fact there is some evidence that the alleged damage was due to events antedating the salvage operation.

Respondent's claim for damages for alleged deprivation of the use of The Cuarto at Manzanillo for the period May 31 to June 6, is not pecuniarily substantial—it is more a part of the misconduct charge elsewhere discussed.

The extent to which the conduct of the Captain and owners of The Gadsden should be considered in calculating the award depends upon all the facts and circumstances. So considering it, I am of the opinion, it is not too substantial. For it is colored by considerable exaggeration. And the desire to escape payment for salvage is a motive not entirely to be overlooked. After the event, what may have been of somewhat transitory significance is often enlarged in aid of defense or replication.[5]

I have reached the conclusion that the danger to The Cuarto was substantial. Its crew was inept and unable to save it. In all probability it would have foundered if help had not arrived. Indeed there is grave doubt as to The Cuarto's seaworthiness when it put to sea. On the other hand, the salvage operation itself was not attendant with great danger or risk to life or property. The sea was not rough. The Gadsden itself did not run much risk. However the salvage operation itself was skillfully performed. Passengers of The Cuarto and their personal belongings were removed without untoward incident.

The owner and crew of The Gadsden respectively pray for a total of $338,750 for their services, exclusive of The Gadsden's claim for expenses and alleged lost earnings. The Cuarto says $15,000 is fair and proper compensation. In this respect, the problem is like the one confronting Judge Coleman in Waterman S. S. Corp. v. Dean, supra, where the salvors asked for $300,000 and the salvaged vessel asserted $10,900 to be proper compensation. As in condemnation cases,[6] the Court must sail a course between over-enthusiasm on the one side and extreme minimization on the other.

In the past it was a general practice for the Admiralty to calculate salvage awards on a percentage basis. The variety and number of these causes is too great to cite. There is no doubt that the better rule today is not to make computations on a percentage basis. The Kia Ora, supra; Waterman S.S. Corp. v. Dean, supra. The award should be in such amount as is just and proper against the background of all the circumstances. Awards in other cases are not rigid yardsticks. The Craster Hall, 5 Cir., 213 F. 436; Joncich v. Xitco, supra.

In making the awards herein, I am relying upon the Ninth Circuit Court's statement in Joncich v. Xitco, supra [9 Cir., 172 F. 1005], that the "Trial Court has wide discretion in determining the amount of a salvage award". Having heard and appraised the testimony of the many witnesses in a case replete with bitter and acrimonious charges and recriminations, I have made awards, which, in my judgment, are the fairest which I am capable of making upon a consideration of the whole case. Particularly is this so since salvage awards in most part are in the nature of bounty to encourage seamen to undertake risks in succoring men and property from the perils of the sea. The Kekoskee, D.C., 47 F.2d 235, 238; Joncich v. Xitco, supra.

It has been asserted that the Court should take into account, in fixing the awards, the decreased purchasing power of the dollar as against past days. See Waterman S.S. Corp. v. Dean, supra. I was

---

[5] For example, an incident when the Captain fired his revolver to warn off a small boat headed toward the tow line, was greatly emphasized as evidence of arbitrary exercise of dominion and authority by the Captain. Likewise the hoisting of the American flag on The Cuarto, while completely unjustified, is given extraordinary significance.

[6] United States v. 37.15 acres, Mariposa County, D. C., 77 F.Supp. 798, 801; United States v. 13.40 acres, Richmond, D.C., 56 F.Supp. 535; United States v. 711.57 acres, Eden, D.C., 51 F.Supp. 30.

formerly of the opinion that this was good practice in fixing damages. However, I am now convinced that this view is erroneous. Particularly is this so in a case where valuations of vessels and cargoes are factors in determining the amount of an award. This is for the obvious reason that valuation of cargoes and vessels are made on the basis of monetary values at the time. Hence it would be unjust to disproportionately increase an award for damages on such a basis.

### The Awards.

 The costs expended and loss suffered by The Gadsden because of the salvage operation are substantial. Certainly as much as, if not more than, $25,000. Under all the circumstances, I am of the opinion, that The Gadsden should receive $50,000.[7] The Captain and crew should receive $40,000. The apportionment between the Captain and crew should be as follows:

| | |
|---|---|
| Captain | $ 5,000.00 |
| Chief Mate | 2,250.00 |
| Five men who made at least one trip in the lifeboats, omitting those here otherwise specially mentioned, a special award of $750 each | 3,750.00 |
| Stewart and Welch, a special award of $1,000 each, Bernard $1,500 | 3,500.00[8] |
| Young and Hughes, a special award of $500 each | 1,000.00[9] |
| Majors, a special award of | 1,000.00[10] |
| | $16,500.00 |

The balance of $23,500 should be prorated among all the crew, exclusive of the Captain and Chief Mate, according to their respective ratings and pay. If the parties are unable to agree upon the calculations to be inserted in the decree, the Court will appoint a Master to make such calculations. There should be no recovery on the cross-libel. The total award ·($90,000) will be assessed proportionately against The Lloyd Cuarto and the cargo on the basis of their respective agreed valuations.

The Gadsden has requested an allowance for attorneys' fees for services rendered to certain of the crew members on whose behalf The Gadsden's attorneys have appeared. I do not find in the record any evidence of services rendered by the attorneys for The Gadsden specially on behalf of the crew. Hence I find no basis for making an award for attorneys' fees.

Prepare findings in accordance with the views expressed.

---

[7] As to proportion of awards to salving vessels, see cases cited 56 C.J. 100; Robinson on Admiralty (1939) 746, 7; Cape Fear Co. v. Pearsall, 4 Cir., 90 F. 435; Waterman S. S. Corp. v. Dean, supra.

[8] Bernard, for unfouling the line in the sea; Stewart, Bernard and Welch, for services aboard The Cuarto at sea.

[9] For services aboard The Cuarto at Manzanillo.

[10] For services in lifeboat and aboard The Cuarto at Manzanillo.